**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 98-20027

SHARON OLABISIOMOTOSHO,

Plaintiff-Appellant,

versus

CITY OF HOUSTON; ET AL;

Defendant,

CITY OF HOUSTON; P. J. BARTLETT; K. L. RICHARDS;
RENE BERTRAND,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

August 30, 1999

Before KING, Chief Judge, and STEWART, Circuit Judge, and LITTLE,* District Judge.

CARL E. STEWART, Circuit Judge:

The district court granted summary judgment in favor of each defendant. For the reasons set forth below, we affirm.

**FACTUAL & PROCEDURAL BACKGROUND**

While driving her two children home from school on December 3, 1993, plaintiff-appellant Sharon Olabisiomotosho stopped to help a stranded motorist. Two Houston police officers,

---

* District Judge of the Western District of Louisiana, sitting by designation.

defendants-appellees P. J. Bartlett and K. L. Richards, pulled up behind her in a marked patrol car, used their onboard computer to check her license plates, and learned that the plates displayed on Olabisiomotosho's car had been issued for another vehicle. Olabisiomotosho drove the motorist to a telephone and then back to the stranded car. As Olabisiomotosho began to drive away, the officers pulled her over, requested her driver's license, and determined that there were outstanding warrants for her arrest. The officers then arrested Olabisiomotosho on the outstanding warrants and for displaying fictitious license plates. At the same time, they discovered that she possessed a second driver's license bearing her picture but a different name and a Social Security card in the name of Dashaun R. Davis.

Olabisiomotosho has suffered from severe chronic asthma since childhood and was using a prescription Ventolin inhaler at the time of her arrest. She requested permission to retrieve her inhaler from her car before she was transported from the scene. One of the officers retrieved it from her car and permitted her to use it. By the time she arrived at the City of Houston jail, however, she was coughing, wheezing, experiencing shortness of breath, and had difficulty keeping up with the officers. Although she told her arresting officers that she needed to slow down or see a doctor, they maintained their pace, told the booking officer that Olabisiomotosho was asthmatic, and departed. After waiting there for approximately thirty minutes, she was then taken to a jail cell where she stayed until her judicial hearing the next morning. According to her deposition testimony, when Olabisiomotosho asked two prison officials – the first being the official who took her to her jail cell, and the second being an unidentified female "trustee" dressed in an orange uniform – whether she could see a doctor, she was told that the clinic was closed. Between the time she was taken to her jail cell and the next morning, Olabisiomotosho claims she was "[c]oughing really bad [and] wheezing really loud." Furthermore, according to Olabisiomotosho, no one asked her about her medical condition during the booking process, and she was not medically screened. Defendant-appellee Rene

Bertrand was the Houston jail clinic assistant on duty the night of Olabisiomotosho's arrest, and was required to screen all new inmates for medical problems.[2]

The next morning, after pleading guilty to the offense of displaying fictitious license plates, Olabisiomotosho was remanded to the custody of the police until her fines and costs were paid or discharged. During her court appearance, Olabisiomotosho was unable to stand upright, and municipal court Judge Victoria C. Dawson asked her what was wrong. Olabisiomotosho explained that she was suffering from chronic asthma and that no medical attention was provided to her because the jail's clinic was closed. The judge responded that the clinic was never supposed to be closed and ordered a guard to take her to the jail clinic for treatment.

The officer did not do so. Instead, jail personnel placed her in a holding cell and then led her to an eating area, where she fainted. Jail officials treated her for an asthma attack and transported her to a local emergency hospital, where she lapsed into a coma, required a respirator, and temporarily lost her eyesight. No permanent physical harm came from this ordeal; however, Olabisiomotosho alleges that she is experiencing "recurring periods of anxiety and distress."

Olabisiomotosho subsequently brought suit under 42 U.S.C. § 1983 (1994) against Bartlett, Richards, and Bertrand (collectively, "individual defendants"), as well as against defendant-appellee the City of Houston ("City").[3] In her first amended complaint, she claimed that she suffered damages

---

[2]Bertrand states in his affidavit that he personally conducted a medical screening of Olabisiomotosho at the City's Central Jail clinic the night she was arrested. According to Bertrand, Olabisiomotosho complained of being a chronic asthmatic, but showed no signs of acute distress. He claims that he permitted her to retain possession of her inhaler. Bertrand admits in his affidavit that the jail's records do not reflect that Olabisiomotosho was medically screened, but avers that he did complete such a form on her. He claims to remember the plaintiff because of her unusual last name.

Olabisiomotosho acknowledges that she was permitted possession of her inhaler during the events in question, although she implies it was another jail official who gave it back to her. In direct contravention of Bertrand's affidavit, Olabisiomotosho claimed in her deposition that she had never before seen Bertrand and insisted she was not medically screened by Bertrand or anyone else. Olabisiomotosho also filed, in her response to defendants' motion for summary judgment, several City documents (all dated after the incident at issue in this case) indicating that Bertrand has had a history of inappropriately leaving his post.

[3]Olabisiomotosho did not indicate in her complaint whether she was bringing suit against Bartlett, Richards, and Bertrand in their official capacities or in their individual capacities. Consequently, the magistrate judge assumed the suit was brought in both. We do the same.

because of negligence, cruel and unusual punishment, the deliberate denial of medical treatment while in police custody, and unlawful arrest. She did not, however, plead to enforce the consent decree entered in Morgan v. City of Houston, No. H-76-0629 (S.D. Tex. Sept. 25, 1989), which requires Houston City jails to *inter alia* provide detainees with incoming medical screens and a twenty-four hour on-call physician. The defendants moved to dismiss or, alternatively, for summary judgment. On November 20, 1997, the magistrate judge recommended that the defendants' motion for summary judgment be granted. Olabisiomotosho objected, but the district court ultimately adopted the magistrate judge's memorandum and recommendation in its entirety. Olabisiomotosho brought this timely appeal.

## DISCUSSION

### I

We review *de novo* the entry of summary judgment, see Morris v. Cowan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998), applying the same standards as did the district court. See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 79 (5th Cir. 1987). After consulting applicable law in order to ascertain the material factual issues, we consider the evidence bearing on the issues, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the nonmovant. See King v. Chide, 974 F.2d 653, 656 (5th Cir. 1992). We resolve factual controversies in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts. See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence. See Douglass v. United States Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996). Summary judgment is properly granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**II**

Olabisiomotosho contends that the City, Bartlett, Richards, and Bertrand incurred liability under § 1983 when they violated her Eighth and Fourteenth Amendment rights by failing to attend to her medical needs in a timely fashion. Section 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 82 (1984). Of course, § 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. See Albright v. Oliver, 510 U.S. 266, 271 (1994).

Although Olabisiomotosho apparently suffered harm both as a pretrial detainee and as a convicted prisoner, her argument on appeal only addresses her rights as a pretrial detainee. The constitutional rights of a pretrial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment, see Bell v. Wolfish, 441 U.S. 520, 535 (1979), which provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 5. These protections, whether procedural or substantive, are not triggered, however, by negligent inaction. See Davidson v. Cannon, 474 U.S. 344, 348 (1986).

This court sitting *en banc* has recently clarified the proper analysis applicable to constitutional challenges by pretrial detainees. See Scott v. Moore, 114 F.3d 51 (5th Cir. 1997) *(en banc)*; Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996) *(en banc)*; see also Flores v. County of Hardeman, 124 F.3d 736 (5th Cir. 1997) (applying this analysis). We begin by deciding whether to classify the "challenge as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" Scott, 114 F.3d at 53. The former category would include such claims as "where a detainee complains of the number of bunks in a cell or his television or mail privileges." Id. The latter category, on the other hand, occurs "where the complained-of harm is a particular act or omission of one or more officials." Id. We find that the case before us falls into the latter category. Olabisiomotosho's complaint turns on Bartlett's and Richard's alleged failure to take better care of her, and Bertrand's failure to

5

medically screen her and secure her to treatment. Such a complaint perfectly fits the definition of the episodic omission.

In an episodic act or omission case, we employ different standards depending on whether the liability of the individual defendant or the municipal defendant is at issue. See Hare, 74 F.3d at 649 n.14. For the individual defendant, the plaintiff "must establish that the official(s) acted with subjective deliberate indifference to prove a violation of [her] constitutional rights." Flores, 124 F.3d at 738-39 (affirming summary judgment as to an individual defendant because there was no genuine issue of material fact indicating that he acted with deliberate indifference). Subjective deliberate indifference means "the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." Hare, 74 F.3d at 650. To succeed in holding a municipality liable, the plaintiff must demonstrate a municipal employee's subjective indifference and additionally that the municipal employee's act "resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the [plaintiff]'s constitutional rights." Id. at 649 n.14.

**A**

The district court granted summary judgment as to all three individual defendants because it found that Olabisiomotosho could not establish a § 1983 claim. Again, to prevail on a § 1983 claim against an individual defendant, a pretrial detainee must show that the defendant "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." Hare, 74 F.3d at 650. The district court's first explanation supporting summary judgment for the individual defendants is that she had not provided summary judgment evidence establishing that her medical needs were serious throughout the period of confinement. The magistrate judge explained:

> Olabisiomotosho can prevail only if she demonstrates that these medical needs were serious, *i.e.*, that her needs were "obvious to the layperson or supported by medical evidence, like a physician's diagnosis." Notably, she has not submitted any medical reports or expert testimony demonstrating that the seriousness of her medical needs was obvious, nor has she put forth any evidence that she presented proof of her

6

serious medical needs to the officials. Indeed, even Olabisiomotosho's account of the events indicates that her medical needs did not become severe until after the time she parted company with Bartlett and Richards.

(citations omitted). Although it is evident that the magistrate judge considered Olabisiomotosho's inability to show serious injury as a basis for granting summary judgment as to Bartlett and Richards, it is unclear whether the magistrate judge meant to use this reason to grant summary judgment as to Bertrand. After all, the magistrate judge's comments referred to Olabisiomotosho's deposition testimony, in which she indicated that, after she was taken to her jail cell and before she was taken to court, she was "[c]oughing really bad [and] wheezing really loud." Moreover, that deposition testimony indicates that Olabisiomotosho specifically asked to go to a clinic, but was told that it was closed. Finally, her deposition testimony also indicated that the municipal court judge was able to observe that Olabisiomotosho's serious medical needs were obvious enough to warrant an (eventually unheeded) order to jail officials to take her to the clinic. Given this summary judgment evidence, we conclude that the magistrate judge only considered Olabisiomotosho's inability to show serious injury as a basis for granting summary judgment as to Bartlett and Richards, and that there still exists a genuine issue of material fact as to the seriousness of Olabisiomotosho's medical condition after she left their care.

Olabisiomotosho's deposition testimony indicates that, prior to being turned over to jail officials, she informed Bartlett and Richards that she had asthma, and that the police officers were walking too fast for her given her asthmatic condition. At this point, she was wheezing and experiencing shortness of breath. None of these alleged facts indicates her medical needs were serious while Bartlett and Richards were responsible for her. While her symptoms while in Bartlett's and Richards' care are similar in type to her symptoms after she left their care, the summary judgment evidence indicates the severity of her symptoms visibly worsened. Accordingly, we affirm the district court's grant of summary judgment with respect to Bartlett and Richards.[4]

_____

[4]Of course, such a conclusion is foreshadowed by Olabisiomotosho's failure to argue against this basis for summary judgment in her appellate brief. See Gomez v. Chandler, 163 F.3d 921 (5th Cir.1999) (noting that arguments abandoned on appeal are considered waived).

**B**

The district court's second rationale for granting summary judgment as to all three individual defendants was that Olabisiomotosho could not identify a genuine issue of material fact concerning the culpability of the defendants' mental state. Again, to show the individual defendant acted with subjective deliberate indifference, the plaintiff must show that the defendant "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." Hare, 74 F.3d at 650. Olabisiomotosho certainly cannot make this showing with respect to Bartlett and Richards. As the magistrate judge noted, "Olabisiomotosho admits in her complaint that one of the arresting officers made a special trip back to her car to obtain her Ventolin inhaler . . . . Moreover, one of the arresting officers informed the booking personnel that Olabisiomotosho had asthma." Such conduct is not deliberately indifferent; on the contrary, such a response is at least reasonable in light of the officers' other responsibilities. While we need not reach the issue because we have already concluded that Bartlett and Richards are entitled to summary judgment on the serious medical need issue, we agree with the magistrate judge's conclusion on this point as well.[5]

Although it is a much closer call, we ultimately conclude that, on the record before us, Olabisiomotosho has also failed to show that Bertrand acted with subjective deliberate indifference. The only direct evidence in the record is Bertrand's two page affidavit, and nothing in it indicates he subjectively knew of a risk to Olabisiomotosho or that he deliberately disregard such a risk. The circumstantial evidence before us is similarly unavailing. See Farmer, 511 U.S. at 842 ("[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ."). Olabisiomotosho urges us to infer Bertrand's subjective knowledge from the fact that, although a

_____

[5]We note that the district court also found that Bartlett and Richards were entitled to qualified immunity. Although Olabisiomotosho submits on appeal that such a finding was in error, we do not reach her argument because we have already decided that she cannot state a § 1983 claim against the two arresting officers.

8

trained emergency medical technician, he walked away from his post. Without a doubt, such behavior is unmistakably dangerous as it means that patients with quiet but potentially life threatening medical conditions will be left to fend for themselves. Nevertheless, liability attaches only if Bertrand actually knew – not merely should have known – about the risk. See id. at 838. ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

Finally, Olabisiomotosho suggests that a reasonable fact finder could infer that Bertrand "knew of a substantial risk from the very fact that the risk was obvious."[6] Id. at 842. Specifically, Olabisiomotosho submits that, given the consent decree in place since 1989, Bertrand "must have" known of the City's past problems in medically treating the prisoners in its care, and that we can infer intent from such knowledge. Id. In discussing the concept of obvious risks and subjective deliberate indifference, however, the Supreme Court indicated that the mere existence of past problems was insufficient as a basis for liability:

> For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the *defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it*, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Id. at 842-43 (internal quotation marks omitted) (emphasis added). In other words, there must be some evidence in the record that Bertrand actually knew of the consent decree in order for this language to have effect. There is no summary judgment evidence in the record, however, specifically indicating whether Bertrand knew of the consent decree's existence when he allegedly failed to screen Olabisiomotosho. The record is similarly silent as to when Bertrand began working for the City, a

---

[6]Furthermore, "[w]hile the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, . . . he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist . . . ." Id. at 843 n.8. Farmer also does not require that the defendant be conscious of the risk to the *particular* inmate who eventually suffered harm as a result of the defendant's actions. See id. at 843.

9

piece of circumstantial evidence from which we could infer such knowledge. See Farmer, 511 U.S. at 842-43. Therefore, based on the state of the record before us, we cannot find a genuine issue of material fact as to Bertrand's subjective deliberate indifference. Accordingly, we affirm the district court's grant of summary judgment as to Bertrand.

## C

The district court also granted summary judgment in favor of the City. To hold a municipality accountable for a violation of constitutional rights, a plaintiff must show: (1) that the municipal employee violated his clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference. See Flores, 124 F.3d at 738. To satisfy the first prong of this test, Olabisiomotosho claims that the City's liability flows from the actions of Bartlett, Richards, and Bertrand. We have already decided , however, that Olabisiomotosho cannot state a § 1983 claim against any of these three defendants. Consequently, Olabisiomotosho's claims against the City fail as well.

## III

Olabisiomotosho also brought a separate action under § 1983 for damages, claiming that Bartlett and Richards violated her Fourth Amendment rights under color of state law by stopping and arresting her without probable cause. The district court dismissed this claim on the merits, noting that there was no Fourth Amendment violation as the police officers had probable cause to arrest Olabisiomotosho. Specifically, the court noted the police officers conducted a computer check of her license plate number and stopped and arrested her only after learning through the check that her car displayed fictitious license plate in violation of Texas law. On appeal, Olabisiomotosho acknowledges that a violation of the traffic law, revealed by a computer check of a license plate, generally gives rise to probable cause sufficient to stop and arrest a suspect. She contends, however, that the exception to this rule is when there is no probable cause to conduct the computer check in the first place.

This argument is without merit. A motorist has no privacy interest in her license plate number. See Harris v. United States, 390 U.S. 234, 236 (1968); United States v. Matthews, 615 F.2d 1279, 1285 (10ᵗʰ Cir. 1980). Like the area outside the cartilage of a dwelling, a car's license plate number is constantly open to the plain view of passersby. Moreover, "[u]nless a registration check reveals information which raises a reasonable suspicion of criminal activity, the subject remains unaware of the check and unencumbered." United States v. Walraven, 892 F.2d 972, 974 (10ᵗʰ Cir. 1989). Of course, after the officers properly discovered that there were outstanding warrants for her arrest, the defendants did not violate the Constitution by arresting her. Because Olabisiomotosho fails to state a constitutional violation, neither defendant can be liable under this § 1983 claim. The district court therefore correctly granted summary judgment for the defendants on this claim.[7]

## CONCLUSION

For the reasons set forth above, we AFFIRM the district court's grants of summary judgment.

---

[7]The district court also found that the defendants were entitled to qualified immunity on this claim. Because we find that the plaintiff cannot state a valid claim under § 1983 and the Fourth Amendment, we need not address the finding of qualified immunity. For the same reason, we need not address appellees' argument that Heck v. Humphrey, 512 U.S. 477, 487 (1994) precludes the plaintiff's Fourth Amendment claim.