**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 00-20859

---

PAULINO ZAVALA,

Plaintiff-Appellant,

versus

CITY OF HOUSTON, TEXAS,

Defendant-Appellee.

- - - - - - - - - -
Appeal from the United States District Court
for the Southern District of Texas.
- - - - - - - - - -
June 29, 2001

Before SMITH, DUHÉ, and WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Paulino "Paul" Zavala appeals the district court's grant of summary judgment dismissing his claims under 42 U.S.C. § 1983, Title VII, 42 U.S.C. § 1981, and the Texas Whistleblower Act, against Defendant-Appellee the City of Houston ("the City"). Zavala claims that the City, through the Internal Affairs Division ("IAD") of the Houston Police Department ("HPD"), retaliated against him for his active opposition to its purported racial discrimination and other illegal conduct by attempting to

---

[*] Pursuant to 5TH Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH Cir. Rule 47.5.4.

entrap him into criminal activity, falsely arresting and incarcerating him, and attempting to subject him to criminal prosecution. The district court granted the City's motion for summary judgment on the ground that a non-disclosure agreement between the parties —— signed as part of an agreement settling charges stemming from an administrative disciplinary investigation of Zavala —— proscribes disclosing the evidence Zavala must adduce to support his claims. Convinced that the district court erroneously interpreted the scope of the non-disclosure provision, thereby overextending its ambit, we reverse that court's grant of summary judgment and remand for further consistent proceedings on an expedited basis.

I. *Facts and Proceedings*

Zavala has been a member of the Houston Police Department for fifteen years, notably serving as an undercover officer in the Narcotics Division from 1989 until September of 1996. In January of 1996, IAD began an investigation of Angela Puente, an Hispanic clerk in the HPD's Narcotics Division and a personal friend of Zavala's. Believing the seeds of this investigation to lie not in perceived wrongdoing by Puente but rather in a rumored romantic relationship between Puente and the husband of an IAD officer —— and perhaps in racial bias as well —— Zavala assisted Puente by, inter alia, helping her obtain legal counsel. The IAD investigation of Puente ultimately uncovered no wrongdoing on her

2

part. Zavala then attempted to bring to the attention of the HPD hierarchy what he believed to have been an improper investigation of Puente.  To this end, he requested a meeting with the Chief of HPD, which request was denied; instead the Chief directed Zavala to submit his complaint in writing through the proper chain of command.  In complying with that directive, Zavala accused IAD of racial discrimination, coercion and intimidation of a witness during an official investigation, and dissemination of confidential documents to persons outside of IAD.

Shortly after Zavala submitted his written complaint as directed, the IAD's Proactive Division undertook a "sting" operation ("the Proactive Investigation") against him.  The City claims that it undertook this investigation after Chris Orzabal, one of Zavala's confidential informants, alleged that Zavala had offered to credit him with having completed the terms of his plea agreement in return for paying Zavala $10,000.  Based on evidence gathered in this Proactive Investigation and the ensuing report, filed under case number 96PA052, Zavala was arrested for money laundering and placed on administrative leave.  The grand jury, however, refused to indict Zavala on these charges; in fact, the foreman advised the District Attorney's office that the grand jury was convinced that HPD had attempted to "frame" Zavala.

HPD nevertheless continued Zavala's administrative leave for an additional eight months after the grand jury returned a "no bill," during which time IAD's Reactive Division instituted a new

investigation of Zavala's conduct ("the Reactive Investigation"). The Reactive Investigation —— conducted under Chapter 143 of the Texas Local Government Code and assigned case number 96-1832 —— ultimately determined that there was not sufficient evidence to prove that Zavala had engaged in money laundering but concluded that he had violated HPD policy in his handling of Orzabal by, inter alia, maintaining a social relationship with him.

In return for HPD's continuing his employment, Zavala agreed to a proposed settlement under which he would accept a transfer out of the Narcotics Division and a 20 calender day suspension, and would waive any right to appeal the terms of the settlement. With the advice of counsel, he signed a "Confidential Last Chance Agreement" ("the Agreement") which included a non-disclosure provision stipulating, in relevant part, that he would not "publish or disclose any information about this procedure, investigation of case no. 96-1832 [the Reactive Investigation] and settlement."

Zavala served his 20-day suspension and returned to work. Shortly thereafter, he filed suit against the City in federal district court, asserting claims under 42 U.S.C. § 1983, Title VII, 42 U.S.C. § 1981, and the Texas Whistleblower Act.[1] In essence, Zavala claims that the City subjected him to false arrest, imprisonment and prosecution in retaliation for his aid to Puente

---

[1] Pursuant to 28 U.S.C. 636(c), the parties consented to trial before a Magistrate Judge. Therefore, the decisions of the magistrate judge are considered to be those of the district court.

and his allegations of IAD's wrongdoings during that investigation. The district court granted summary judgment for the City, concluding that Zavala had waived his right to bring claims against the City in any way relating to IAD's investigations. On appeal ("Zavala I"), we reversed that decision, holding that Zavala had waived only his right to appeal the City's administrative disciplinary suspension and had not waived his right to assert his federal and state civil rights claims against the City. In Zavala I, we expressly declined to address the scope of the non-disclosure provision of the Agreement and remanded the case to the district court.

On remand, the district court again granted summary judgment for the City ("Zavala II"), concluding that the non-disclosure provision of the Agreement prohibits Zavala from introducing any evidence relating to IAD's investigation of his conduct, as a result of which he would not be able to present sufficient evidence to support his claims. Zavala timely appealed.

II. *Analysis*

A. Standard of Review

As this case is on appeal from a dismissal on summary judgment, we review it de novo, applying the same standard as the district court.[2] A motion for summary judgment is properly granted

---

[2] Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

only if there is no genuine issue as to any material fact.[3]  An issue is material if its resolution could affect the outcome of the action.[4]  In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.[5]

The standard for summary judgment mirrors that for judgment as a matter of law.[6]  Thus, we must review all of the evidence in the record, but make no credibility determinations or weigh any evidence.[7]  In reviewing all the evidence, we must disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.[8]

We review questions of law, including the interpretation of an unambiguous contract, de novo.[9]

---

[3] Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[5] Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).

[6] Celotex, 477 U.S. at 323.

[7] Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

[8] Id. at 150.

[9] Stinnett v. Colorado Interstate Gas Co., 227 F.3d 247, 254 (5th Cir. 2000).

B. Scope of the Non-disclosure Provision

The only issue before us today is whether the non-disclosure provision of the Agreement prevents Zavala from disclosing any information relating to both of IAD's investigations of his conduct —— the Proactive Investigation and the Reactive Investigation —— or only that gathered in the Reactive Investigation, case number 96-1832. We repeat for emphasis that the non-disclosure provision states: "Neither I nor my representative will publish or disclose any information about this procedure, investigation of case no. 96-1832 or settlement."

The district court concluded that this provision prohibited Zavala from disclosing information in any way relating to either of IAD's investigations of his conduct. More specifically, the court held that the non-disclosure provision included within its scope both the Reactive Investigation (case number 96-1832) and the earlier, Proactive Investigation (case number 96PA052), expressly stating that Zavala's "attempted delineation [between the two investigations] constitutes a distinction without a difference." We disagree.

To interpret a contractual provision, we start by determining whether the provision is ambiguous. "If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and it can be construed as

7

a matter of law."[10] "If its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning, taking into consideration circumstances present when the particular writing was executed," it is ambiguous.[11] "In construing a written contract, our primary concern is to ascertain the true intentions of the parties _as expressed in the written instrument_."[12] Only if the contract is ambiguous may we look to extraneous evidence to ascertain the intent of the parties.[13]

We find the Agreement's non-disclosure provision to be clear and unambiguous. It pellucidly states Zavala's consent not to disclose any information regarding (1) "this procedure," (2) "the investigation of case no. 96-1832," and (3) the settlement agreement between Zavala and HPD. Each of these phrases is facially unambiguous; the meaning of each is easily ascertainable by considering its text and the facts as they existed at the time the parties agreed to the provision.

The term "procedure," although not defined anywhere in the Agreement, indisputably refers to the administrative disciplinary procedure undertaken against Zavala on the basis of the Reactive

---

[10] _Lenape Resources Corp. v. Tennessee Gas Pipeline Co._, 925 S.W.2d 565, 574 (Tex. 1996) (quoting _Coker v. Coker_, 650 S.W.2d 391, 393 (Tex. 1983)).

[11] _Lenape_, 925 S.W.2d at 574.

[12] _Id._ (emphasis added).

[13] _Id._

8

Investigation (96-1832). Not only was this the only "procedure" pending at the time the Agreement was drafted and signed but it was also the only "procedure" undertaken involving Zavala; the Proactive Investigation, which led to Zavala's criminal arrest and ultimate exoneration by the grand jury, did not result directly in the filing of administrative charges against him. The term "settlement" can only refer to the Agreement, in which Zavala —— in return for his retention by the City as a member of its force —— accepted the City's proposed administrative sanctions, gave up his right to appeal that suspension, and signed the Agreement, which contains the non-disclosure provision.

The phrase "investigation of case no. 96-1832" is equally straightforward. IAD conducted <u>two</u> investigations of Zavala, one by the Proactive Division under case number 96PA052 and the other by the Reactive Division under case number 96-1832. The Proactive Investigation (96PA052) was conducted, a report was filed, criminal charges were sought but rejected by the grand jury, and the Proactive Investigation was terminated, all before the Reactive Investigation was ever commenced. The Reactive Investigation was assigned a case number different from the number assigned to the erstwhile Proactive Investigation, was performed by a different division of IAD, and all evidence was placed in a separate file.[14]

_____

[14] The fact that IAD's Reactive Division transferred the majority of the contents of the Proactive case file into the Reactive file for purposes of its investigation is immaterial to the subject issue. The City's contentions to the contrary

9

When the City eventually brought its administrative disciplinary procedure against Zavala, it did so under case number 96-1832, the same (and only) number referenced in the non-disclosure provision. In sum, these investigations are temporally distinct; they sought different ends; they were performed by distinct entities within IAD; and they were conducted under different case numbers. To paraphrase Justice Scalia's observation about statutory interpretation in Oncale v. Sundowner Offshore Services, Inc., "it is ultimately the provisions of [the contract] rather than the principal concerns of [the parties] by which we are governed."[15]

No matter how hard we might strain, we cannot read the non-disclosure provision, as does the City and as did the district court, to encompass both the Reactive Investigation (case no. 96-1832) and the Proactive Investigation (case no. 96PA052). We do not perceive the presence of any ambiguity regarding which investigation is included within the non-disclosure provision's scope. That provision does not broadly prohibit Zavala from disclosing any information whatsoever regarding IAD's investigations of his conduct but instead expressly and restrictively addresses only the Reactive Investigation, making neither explicit nor implicit reference to the Proactive Investigation or information it produced. When drafting the

---

notwithstanding, this file transfer in no way blurs the clear distinction between the two investigations.

[15] 523 U.S. 75, 79 (1998).

10

Agreement, the City was fully aware that two separate and distinct investigations of Zavala, bearing two different case numbers, had been undertaken; yet the City chose not to address or even refer to the Proactive Investigation in the Agreement. It is never for us to save a party from the consequences of its own drafting errors — if errors they be.

When the meaning of a contract is clear on its face, we do not act as mindreaders, second-guessing that plain meaning or straining to discern the "subjective" intentions of the parties. If the City had intended something other than is conveyed by the plain wording of the non-disclosure provision — i.e., that Zavala be prohibited from disclosing any information regarding anything other than that which is expressly listed in the non-disclosure provision — it was free to draft the Agreement using terms that would accomplish such intentions, then try to convince Zavala to sign it. Because it did not, however, we conclude that Zavala is free to use as evidence in his suit against the City any and all information gathered by IAD pursuant to its Proactive Investigation of Zavala in case number 96PA052. That such information may have been transferred by IAD from the file of one investigation to that of another does not immunize anything taken from the Proactive Investigation file, all of which shall be subject to discovery by Zavala.

### III. *Conclusion*

The non-disclosure provision of the Confidential Last Chance

11

Agreement does not prohibit Zavala from disclosing information regarding IAD's investigation no. 96PA052 — the proactive "sting" operation that lead to his allegedly wrongful arrest and therefore stands as the predicate for this suit.  Because the district court erroneously concluded that this information is unavailable to Zavala in pursuing his suit and granted the City's motion for summary judgment, we reverse that decision and remand for further proceedings consistent with this opinion.  In doing so, we neither express nor imply an opinion regarding the substance of Zavala's claims.  We do, however, stress that the City must make available to Zavala any and all evidence in its possession regarding its Proactive Investigation, regardless of whether that evidence remains in the file for investigation number 96PA052 or was later transferred to the file for investigation number 96-1832 or elsewhere.[16]  Given the delays in the timely disposition of this case that have resulted from the district court's twice improvidently granted summary judgment to the City, we direct that further proceedings in this matter be handled on an expedited basis, culminating sooner rather than later in a timely trial on the merits.

REVERSED and REMANDED.

---

[16] As to any material that the City may contend must remain undisclosed to protect innocent persons or otherwise maintain needed confidentiality, Zavala, if he so chooses, can have the district court examine such data in camera and perform such balancing tests and other determinations as may be appropriate to disclosure or non-disclosure.