IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 01-20205
Summary Calendar

BRUCE W. SMITH, Etc.; ET AL.,

Plaintiffs,

BRUCE W. SMITH, Individually and as
Representative of the Estate of Justin Wayne
Smith, Deceased; WANDA  G. SMITH,
Individually and as Representative of the
Estate of Justin Wayne Smith, Deceased,

Plaintiffs-Appellants,

versus

BYRON KEITH BLUE, Etc., ET AL.,

Defendants,

BYRON KEITH BLUE, Acting Individually
and in his official capacity; ROBERT ALLEN
WYNN, acting individually and in his
official capacity; HARRIS COUNTY,

Defendants-Appellees.

Appeal from the United States District Court for
the Southern District of Texas
(USDC No. H-99-CV-1787)

April 12, 2002

Before REAVLEY, HIGGINBOTHAM and WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiffs Bruce and Wanda Smith appeal from the district court's grant of summary judgment against them on their civil rights claims stemming from the suicide of their son, Justin Smith, while in the custody of Harris County at a boot camp for juvenile offenders. They have abandoned their claims under 42 U.S.C. § 1985 and the Texas Tort Claims Act and do not appeal the dismissal of civil rights claims against defendant Wynn. Only their 42 U.S.C. § 1983 claims against Harris County and Byron Blue, a shift supervisor at the facility, are before us. After a *de novo* review of the record, we affirm.

A.    *Byron Blue*

The district court granted Blue's motion for summary judgment on qualified immunity grounds. To determine whether a government official is entitled to qualified immunity, we determine, "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident."[1]

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Jacobs v. West Feliciana Sheriff's Dep't., 228 F.3d 388, 393 (5th Cir. 2000). The Smiths argue that qualified immunity should not even have been triggered in this case because they claim that Blue had a non-discretionary obligation to make room checks every fifteen minutes. Fifteen-minute checks of juveniles on temporary confinement were to be made by the floor supervisor, not the shift supervisor. As a shift supervisor, Blue was responsible for making regular checks on all temporary confinees every two hours. There is no evidence to contradict his

2

In the present case, the Smiths have alleged an Eighth Amendment violation, arguing that the Delta 3 facility and Blue failed to provide for Justin's "basic human needs, including medical care and protection from harm."[2]

However, they have failed to show that Blue's conduct was objectively unreasonable. In the Eighth Amendment context, officials are only liable for episodic acts or omissions resulting in harm to a prisoner or detainee if they have "subjective knowledge of the risk of serious harm to a [prisoner] but respond[] with deliberate indifference."[3] The knowledge of the risk is measured subjectively, because "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."[4] In the absence of knowledge that there was a substantial risk Justin would commit suicide, it is not possible to say that Blue's alleged failure to check in on Justin constituted deliberate indifference, and thus could not have been objectively unreasonable in light of existing case law.[5]

_____

statement, corroborated by Cheryl Hicks, that he checked rooms at 6:00 p.m. on September 2, his last scheduled check before Justin hung himself.

[2] Id. (quoting Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc) (Hare II)).

[3] Id. at 394 (quoting Hare II, 74 F.3d at 650).

[4] Farmer v. Brennan, 511 U.S. 825, 838 (1994).

[5] See Hare v. City of Corinth, 135 F.3d 320, 328-29 (5th Cir. 1998) (Hare III) ("[J]ailers must take measure to prevent inmate suicides *once they know* of the suicide risk.") (emphasis added).

We agree with the district court that the plaintiffs have not created a disputed issue of material fact as to Blue's subjective knowledge of the risk that Justin would commit suicide. The Smiths maintain that Blue had actual knowledge of the risk, because of past instances in which Justin had manifested an intent to harm himself. As recently as August 27, 1997 Blue had placed Justin in restraints after it was reported to him that Justin had been found standing on a table or sink with a sheet. Blue marked a report that he had used restraints because he thought Justin might hurt himself. Blue denies that he thought the August 27 incident was an attempted suicide, stating in his affidavit that he assumed Justin had been trying to cover a window with the sheet and that restraints were needed to prevent Justin from continuing to climb on furniture or fixtures.

Even if we assumed that the August 27 incident could only have been interpreted by Blue as a likely suicide attempt, the district court correctly found that to be insufficient to create a dispute as to whether on the evening of Justin's suicide almost one week later, Blue subjectively believed that there was a significant risk Justin would take his own life. By August 28, Justin had been taken off close observation by other Delta 3 personnel. Blue stated that since August 27 he had seen and interacted with Justin and he appeared to be doing well. On the evening that he committed suicide, Justin was not on suicide watch. He had been placed in "temporary confinement," a disciplinary measure, before Blue came on duty. Blue had no psychological training to judge suicide risk. There is no evidence that on September 2, Justin said or did anything that would have made the risk of suicide "obvious" to Blue. Finally, the Smiths have no response to Blue's assertion

4

that he did not think Justin *could* commit suicide by hanging himself because he thought the sprinkler head Justin used was designed to prevent that exact occurrence.[6]

B.      *Harris County*

Because there is no evidence that Harris County policymakers acted with indifference, there is no liability on the part of the County.[7] We note also that the Smiths' arguments that Harris County violated their son's rights by "warehousing" him in a facility lacking the ability to treat depression and other psychological problems, and that Harris County deliberately attempted to shield itself from liability by building layer upon layer of bureaucracy, are new on appeal and we decline to review them.[8]

Accordingly, we affirm the judgment of the district court.

---

[6] The Smiths in fact asserted as a theory in this case that the specially designed sprinkler head was improperly installed.

[7] See Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).

[8] See Leverette v. Louisville Ladder Co., 183 F.3d 339, 342 (5th Cir. 1999).