**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 02-30783
Summary Calendar

_____

SALCO CONSTRUCTION INC., A Louisiana Corporation,

Plaintiff,

v.

ELVIN CHESTER SIMPSON, JR.; ET AL,

Defendants,

B. J. COUVILLION,

Defendant-Third Party Plaintiff-Appellant,

and

BRENT J. COUVILLION,

Defendant-Appellant,

HANOVER INSURANCE COMPANY

Third Party Defendant-Appellees.

_____

Appeal from the United States District Court
For the Middle District of Louisiana
(No. 00-CV-707-D)

_____

February 27, 2003

1

Before HIGGINBOTHAM , SMITH, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Salco Construction Inc. ("Salco") appeals the district court's grant of summary judgment in favor of Hanover American Insurance Company ("Hanover") and dismissal of Salco's claims with prejudice. Salco argues that its bid solicitations to potential subcontractors qualifies as advertising under state law, that copyright infringement in the bid solicitations is covered by its insurance policy; and thus that Hanover has a duty to defend Salco in this copyright suit. Because Salco's bid solicitations are not advertising of "goods, products or services," the contract does not place a duty to defend on the insurer. We affirm.

I.     BACKGROUND

This insurance coverage dispute arises in the context of the construction of a commercial building. Salco Construction Inc. ("Salco") alleges Elvin Chester Simpson, Jr., or Simpson Inc. (collectively "Simpson") asked Salco to design and construct a building at 1334 Florida Boulevard, to which Salco agreed. According to Salco's complaint, Salco delivered copies of building plans ("the Salco plans") at various stages of completion, culminating in the delivery of 22 sheets of drawings on November 19, 1999. Salco registered copyrights for the architectural works embodied in the plans on February 22 and April 10, 2000, and registered copyrights in the technical drawings embodied in the plans on September 13, 2000.

In a deposition, Brent J. Couvillion, of B. J. Couvillion, Inc. (collectively "Couvillion"), testified Simpson provided the Salco plans to Couvillion in the middle of November, 1999. Simpson

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

eventually hired Couvillion to design and build the building at 1334 Florida Boulevard.

Salco filed this suit, alleging Couvillion built a substantial copy, or derivative work, of the building depicted in the Salco plans. Couvillion filed a third-party claim against its insurer, Hanover American Insurance Company ("Hanover"), asserting that Hanover owes Couvillion a duty to defend and to indemnify Couvillion. Hanover moved for summary judgment, denying it had a duty to defend Couvillion and denying coverage. Couvillion filed a cross-motion for summary judgment.

The Hanover policy provides in part:

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1.      Insuring Agreement.

      a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' or offense and settle any claim or 'suit' that may result . . .

      b.      This insurance applies to:

            (1)      'Person injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

            (2)      'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services;

      but only if the offense was committed in the 'coverage territory' during the policy period.

Hanover Policy § I(B).

3

Another section of the Hanover policy defines 'advertising injury':

SECTION V - DEFINITIONS

1.      'Advertising injury' means injury arising out of one or more of the following offenses:

   a.      Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b.      Oral or written publication of material that violates a person's right of privacy;

   c.      Misappropriation of advertising ideas or style of doing business; or

   d.      Infringement of copyright, title or slogan.

Hanover Policy § V.

The district court focused on Section I(B)(1)(b)(2), which provides insurance coverage for an "'[a]dvertising injury' caused by an offense committed in the course of advertising your goods, products, or services . . . ." The district court isolated two issues: (1) whether Couvillion committed its alleged offense *in the course of advertising* its goods, products or services; and (2) whether the offense caused Salco's alleged injury. The district court granted summary judgment in favor of Hanover, concluding that Couvillion committed its alleged offense in the course of advertising but that the alleged offense did not cause Salco's injury.

II.      STANDARD OF REVIEW

We review the construction of an unambiguous contract *de novo*. *Clardy Mfg. Co. v. Marine Midland Bus. Loan*, 88 F.3d 347, 352 (5th Cir. 1996). The determination that a contract is ambiguous is a legal question subject to *de novo* review. *Id.* When a contract is ambiguous and its construction turns on extrinsic evidence, we review the district court's interpretation only for clear

4

error. *Id.*

This Court reviews a district court's grant of summary judgment *de novo*. *Askanase v. Fatjo*, 130 F.3d 657, 669 (5th Cir. 1997). A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether a fact issue exists, the reviewing court must view the facts, and inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

III.    DISCUSSION

The parties disagree over whether the term 'advertising' covers bid solicitations between general contractors and subcontractors. This dispute need not be addressed on appeal because the Hanover policy applies to only a subset of advertising injuries. Specifically, the policy covers offenses "committed in the course of advertising *your goods, products or services . . . .*" Hanover Policy § I(B)(1)(b)(2).

Even if Couvillion's bid solicitations are advertisements, they are not advertisements of Couvillion's goods, products or services. Couvillion sought bids from subcontractors in order to allow it to fulfill its contract with Simpson. As a potential purchaser of the subcontractors' goods, products or services, Couvillion's bid solicitations clearly were not offering to the subcontractors any goods, products or services from Couvillion.

It may be true that a general contractor that organizes large projects and divides them into smaller, outsourced projects, is implicitly providing a service to subcontractors, each of whom benefits from the narrowed scope of a particular subcontract. But the language of this contract,

which lumps "goods" and "products" with "services," indicates the parties contemplated insurance coverage only for advertising directed to the traditional consumers of a general contractor's products, goods and services (real estate developers), and not to the recipients of an incidental benefit of de-aggregation (subcontractors).

Because the bid solicitations were not advertisements of Couvillion's products, goods or services, this Court need not address whether the injury from which Salco actually seeks recovery under the copyright statute, lost profits for Couvillion's creation of a derivative work, is affected by the duplication and distribution of the Salco plans.

IV.    CONCLUSION

We affirm the district court's grant of summary judgment to Hanover.

AFFIRMED.