IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 25, 2008

Charles R. Fulbruge III
Clerk

No. 07-31002
Summary Calendar

CAROL CORLEY

Plaintiff-Appellant

V.

STEVE PRATOR, In his official capacity as Sheriff of Caddo Parish

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:06-CV-392

Before JONES, Chief Judge, and CLEMENT and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Carol Corley filed suit against Caddo Parish Sheriff Steve Prator in his official capacity under 42 U.S.C § 1983 and LA. CIV. CODE ANN. art. 2315. Corley alleged that she attempted suicide while incarcerated at the Caddo Correctional Center ("CCC") because the defendant failed to provide adequate medical treatment for her withdrawal from prescription pain medication. The district court granted the defendant's motion for summary judgment. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. BACKGROUND

On Wednesday, March 16, 2005, Carol Corley was arrested for failing to complete a substance abuse program as required by her probation. At the time she was taken into custody, Corley was under the care of a pain management doctor for a prior back injury and had been prescribed Methadone, Soma, Lortab and Xanax. During her initial booking, Corley was interviewed by a CCC booking clerk, Trellus McCain, who completed an inmate screening form for Corley. Corley informed McCain that she was taking the pain relievers Methadone, Lortab, and Soma, but did not report that she was taking the anti-anxiety medication Xanax. On the day of her arrest, Corley's mother left a voicemail at CCC stating that Corley should not be taken off of her pain medication "cold turkey."

Later that day, a nurse with CCC, Jennifer Jackson, reviewed Corley's medical screening form. She contacted Corley and requested the name of her physician. Corley stated that she saw a "Dr. Baker" of Lafayette, Louisiana, but could not recall his first name. After recording this information in Corley's chart, Jackson explained the prison's kite system, through which inmates may ask to see a physician. CCC permits any inmate who fills out a kite request to see a doctor during the regularly-scheduled doctor visits on Tuesdays and Thursdays. If an inmate reports a medical emergency, CCC nurses examine the inmate to determine whether she should immediately be transported to the hospital. Corley was familiar with the kite system from her previous incarcerations at CCC.

Nurse Carol Martin subsequently attempted to locate a Dr. Baker in Lafayette by searching internet and phone listings, but was unable to do so. The parties later learned that Dr. Baker left his practice in Lafayette shortly before Corley was arrested.

On Friday, March 18, 2005, Nurse Janice Graham examined Corley. Graham reported that Corley's speech and eye contact were appropriate, her posture was normal, and she was alert and oriented. Corley did, however, tell Nurse Graham that she was nauseated, had diarrhea, and was experiencing sinus problems and back pain. Graham provided Corley with Tylenol Sinus and Dramamine. After the evaluation by Nurse Graham, Corley did not request additional medical treatment from CCC personnel either informally or through the kite system.

Corley's mother, Betty Lamoreaux, visited her twice during her five-day incarceration, including once on the morning of her suicide attempt. Lamoreaux's description of Corley in the hours before the incident is consistent with that of CCC employees — Corley exhibited no signs of mental difficulties and said nothing of withdrawals from her pain medication. During her deposition, Corley admitted that neither her mother nor the housing unit deputies would have been able to observe that she was having hallucinations or other mental problems.

On the afternoon of March 21, 2005, Corley was cleaning tables in the cafeteria with her cell mates. She asked to go to her cell to use the restroom. Once in her cell, Corley states that she had a hallucination in which her two sons urged her to join them in heaven by committing suicide. Corley stabbed herself with two ink pens, first in the chest and then in both eyes. Corley was taken to a nearby hospital where she received treatment for her injuries.

On March 6, 2006, Corley filed suit against Caddo Parish Sheriff Steve Prator in his official capacity, alleging a violation of the Eighth Amendment under 42 U.S.C. § 1983 and state law negligence under LA. CIV. CODE ANN. art. 2315. Specifically, Corley argued that defendant did not provide adequate medical care while she was in custody because CCC abruptly discontinued her pain medication and failed to properly treat her withdrawal. On April 30, 2007,

the defendant filed a motion for summary judgment, which the district court granted. This appeal followed.

## II. DISCUSSION

We review a summary judgment de novo, using the same standard applicable in the district court. Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999). "After consulting applicable law to ascertain the material factual issues, we consider the evidence bearing on the issues, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the nonmovant." Id. "Summary judgment is properly granted if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting FED. R. CIV. P. 56(c)).

### A.

Corley alleges that the defendant violated her Eighth Amendment rights by failing to provide adequate medical care. In an "episodic act or omission" case like this one, we employ different standards depending on whether the liability of the individual defendant or the municipal defendant is at issue. Olabisiomotosho, 185 F.3d at 526. To hold liable an individual defendant, the plaintiff "must establish that the official(s) acted with subjective deliberate indifference to prove a violation of [her] constitutional rights." Id. However, because Corley filed suit against Sheriff Prator only in his official capacity, the suit must be treated as being against the municipality. See Turner v. Houma Mun. Fire & Police Civil Serv. Bd., 229 F.3d 478, 483 (5th Cir. 2000). To hold a municipality liable, the plaintiff must demonstrate that a municipal employee acted with subjective deliberate indifference and that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the plaintiff's constitutional rights.

Olabisiomotosho, 185 F.3d at 526. The subjective deliberate indifference standard focuses on what the municipal employee actually knew. The objective deliberate indifference standard considers not only what the policy maker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights. Lawson v. Dallas County, 286 F.3d 257, 264 (5th Cir. 2002).

The district court granted summary judgment for the defendant, finding, inter alia, that Corley had failed to establish subjective deliberate indifference on the part of any CCC employee. Citing Lawson, Corley argues that a showing of subjective deliberate indifference by a municipal employee is unnecessary when suit is filed against a municipality. Id. Corley contends that she need only establish the second prong of the test outlined above — that a municipal policy was adopted with "objective deliberate indifference." Lawson does not support this contention. Only after the plaintiff demonstrated subjective deliberate indifference did the court in Lawson examine whether the municipality's official policy also "reflect[ed] the municipality's deliberate indifference to that injury." Although Corley filed suit against a municipality, she must meet both the subjective and the objective standards. See Olabisiomotosho, 185 F.3d at 526 ("To [hold a municipality liable], the plaintiff must demonstrate a municipal employee's subjective indifference and additionally that the municipal employee's act 'resulted from a municipal policy . . . adopted . . . with objective deliberate indifference." (emphasis added)).

Ample evidence supports the district court's finding that Corley failed to establish that any CCC employee acted with subjective deliberate indifference. "Deliberate indifference is an extremely high standard to meet." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). An official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk

of serious harm exists, and he must also draw the inference. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994). When Corley arrived at CCC, the booking clerk asked Corley questions about her medical condition, and noted the medications Corley was taking on an intake form. Nurse Jackson followed up with Corley by asking for the name of her physician. Nurse Hale attempted albeit unsuccessfully, to locate a Dr. Baker in Lafayette by searching internet and phone listings. Additionally, when Corley complained of nausea and sinus problems, Nurse Graham promptly examined her and provided over-the-counter medications to treat these symptoms. According to the testimony of CCC personnel and Corley's mother, Corley did not exhibit outward signs of mental difficulties. Corley never told any jail official that she was experiencing withdrawal and never requested Methadone or other prescription medications.

Because Corley has failed to raise a fact issue as to the subjective deliberate indifference of a CCC employee, we need not consider her argument, also rejected by the district court, that the defendant had adopted or maintained a policy or custom with objective deliberate indifference to the inmates' constitutional rights. We affirm the district court's grant of summary judgment on the § 1983 claim.

B.

Corley also challenges the district court's dismissal of her state law negligence claim under LA. CIV. CODE ANN. art. 2315.[1] The district court held that prison authorities owe a duty to inmates to provide reasonable medical care. See Harpin v. Goodwin, 930 So. 2d 1160, 1163 (La. App. 2006). It found, however, that the defendant did not breach the duty in this case. We agree. An individual who does not receive narcotic pain medication may foreseeably

---

[1] Corley's claim does not include allegations that the defendant's negligent supervision caused her suicide attempt. She argues exclusively that her injuries resulted from CCC's failure to provide reasonable medical care.

experience discomfort while incarcerated, but there was nothing to suggest that this could be life-threatening or should prompt immediate referral to a doctor or hospital. Corley only reported to CCC that she had taken the Methadone, Lortab, and Soma; she did not inform CCC personnel that she had taken Xanax. The defendant presented evidence, which Corley did not dispute, that there is no known correlation between withdrawal from Methadone, Soma, or Lortab and a sudden psychotic episode of the type experienced by Corley.[2] The defendant's approach of waiting until a regularly scheduled doctor visit to have Corley evaluated by a physician was reasonable given that Corley did not report use of medications that are linked to complications such as psychosis or seizures, did not request any medical attention that was not provided, and did not exhibit any outward symptoms of mental difficulties.

Corley argues that genuine issues of material fact exist as to four of the reasons the district court cited in finding that CCC did not breach its duty. Corley first challenges the district court's statement that Corley received two medical examinations from nurses at CCC. The defendant concedes that Corley was only "examined" by one nurse. Nurse Jackson merely questioned Corley about her medical information and explained the kite system on March 16th, and Nurse Graham actually examined Corley on March 18th. This minor discrepancy in the district court's opinion does not create a material fact issue. Corley admits that she did not report that she was experiencing psychiatric problems or withdrawal to the nurses during either one of the interactions.

Corley next challenges the district court's statement that she did not complain of hallucinations or symptoms of drug withdrawal, arguing that she

---

[2] There is evidence in the record that withdrawal from Xanax can cause complications such as psychosis, but Corley did not argue before the district court, as she does now, that her episode was caused by her Xanax withdrawal. Arguments not made before the district court are waived and will not be considered on appeal. Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 601 (5th Cir. 2005). In any case, it is undisputed that Corley did not tell CCC personnel that she was taking Xanax.

did in fact report such symptoms because nausea and a "serious, fluid runny nose" are associated with Methadone withdrawal. This argument is insufficient to create a material fact issue. Corley's generalized complaints of nausea and sinus congestion did not reasonably put CCC on notice that Corley was experiencing severe and dangerous withdrawal, including psychosis, thereby obligating CCC to provide immediate care from a doctor. As mentioned, the defendant presented evidence that there is no known correlation between withdrawal from Methadone, Soma, or Lortab and psychosis.

Corley also contends that there are genuine issues of material fact as to two other statements the district court made: whether she admitted that others would be unable to tell that she was hallucinating or suffering withdrawal and whether she was treated for the symptoms she reported. Corley offers no other explanation or argument as to how these issues are genuinely in dispute.[3] Arguments inadequately briefed on appeal are waived. United States v. Freeman, 434 F.3d 369, 374 (5th Cir. 2005).

Finally, Corley asserts that the affidavit of Dr. John Clark established a genuine issue of material fact as to whether the medical care the defendant provided was reasonable. Dr. Clark's affidavit states in a conclusory fashion that CCC did not act reasonably in providing healthcare to Corley, and that this failure led to Corley's psychotic episode. Clark's conclusory opinions, which are based in part on inaccurate factual assumptions, are insufficient to stave off summary judgment. See Orthopedic & Sports Injury Clinic v. Wang Labs., Inc., 922 F.2d 220, 225 (5th Cir. 1991) ("[U]nsupported . . . affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment.")

---

[3] Indeed, Corley conceded in her deposition that there were no outward physical manifestations of her withdrawal. And it is undisputed that CCC provided over-the-counter medications to alleviate the pain, nausea, and sinus congestion that Corley reported.

## III. CONCLUSION

For these reasons, we AFFIRM the district court's grant of summary judgment.