IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 2, 2008

Charles R. Fulbruge III
Clerk

No. 07-61023

RENISA L BRUMFIELD, Individually and as Wrongful Death Beneficiaries
and Representatives of the Heirs-at-Law of Theodore Smith, Deceased; and
the Estate of Theodore Smith, by and through its duly appointed
Administratrix, Renisa L Brumfield

Plaintiff – Appellant

v.

SOLOMON RAY HOLLINS, In his Official Capacity as Deputy Sheriff of
Marion County, Mississippi; CLARENCE LOUGE, In his Official Capacity as
Deputy Sheriff of Marion County, Mississippi; DELANO THORNHILL,
"Butch", In his Official Capacity as Deputy Sheriff of Marion County,
Mississippi; RICHARD STRINGER, "Rip", Individually and in his Official
Capacity as Sheriff of Marion County, Mississippi; MARION COUNTY,
MISSISSIPPI; CHARLES BUMPER BRYANT, In his Official Capacity as
Deputy Sheriff of Marion County, Mississippi

Defendants – Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before BENAVIDES, SOUTHWICK, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Theodore Smith hung himself on January 3, 2002 while confined in the
"drunk tank" at the old Marion County Jail (the "Old Jail"). Renisa Brumfield,
Smith's daughter, instituted this action under 42 U.S.C. § 1983 (2003) against

Marion County and against Sheriff Richard "Rip" Stringer, Deputy Sheriff Solomon Ray Hollins, Deputy Sheriff Clarence Louge, Deputy Sheriff Delano "Butch" Thornhill, and Deputy Sheriff Charles "Bumper" Bryant in their individual and official capacities. The district court awarded summary judgment to each defendant sued in his individual capacity on the basis of qualified immunity. After the case went to trial, the district court directed a verdict in favor of all remaining defendants – Marion County and Stringer, Hollins, Louge, Thornhill, and Bryant in their official capacities. Brumfield now appeals, seeking reversal of the district court's order granting Sheriff Stringer qualified immunity and its order directing a verdict in favor of Marion County and each defendant in his official capacity.[1] We AFFIRM.

## I. FACTUAL BACKGROUND

On January 2, 2002 at 5:08 pm, Bryant pulled over Smith for driving erratically. Bryant administered a portable breathalyzer test, determined that Smith's blood alcohol level was above the legal limit for a person operating a motorized vehicle, and placed Smith under arrest. Because this would be Smith's third arrest for drunk driving, Smith knew he was facing a felony charge and significant jail time if convicted.

At the Old Jail, Columbia Police Officer Chris Brumfield administered another breathalyzer exam. Smith's blood alcohol level was .321%,[2] more than three times the legal limit of .1%. According to the Marion County log, Smith's belt, watch, jacket, and hat were removed from his person; Smith was allowed to keep his shoes and his shoelaces. At approximately 5:45 pm, Smith was placed in the Old Jail's "drunk tank." The Old Jail had no requirement that the

---

[1] Brumfield did not appeal the district court's grant of summary judgment to the individual defendants other than Stringer in their individual capacities.

[2] While this level of intoxication might be completely incapacitating to some, the undisputed evidence shows that Smith was able to walk despite his high level of intoxication.

jailers routinely check on pretrial detainees, but the drunk tank was only ten feet away from the jailer's desk. Inmate trusties relayed detainees' requests and concerns to the jailer on duty.

Thornhill was the jailer on duty when Smith arrived at the Old Jail. At approximately 9:00 pm, Smith knocked on the drunk tank door and asked Darryl Stogner, the inmate trusty on duty, to transfer him to another cell where he could have a bed. Stogner relayed Smith's request to Thornhill, but Thornhill said not to let Smith out until 10:30 pm. At approximately 9:45 pm, with Thornhill's approval, Stogner let Smith out of the drunk tank to get a drink of water. Smith also requested that he be able to call his mother. Again, Thornhill denied the request and instructed that Smith not be let out of the drunk tank until 10:30 pm. Shortly thereafter, Smith began beating on the drunk tank door and continued to do so for the next twenty or thirty minutes.

Hollins relieved Thornhill from duty sometime between 10:30 pm and 11:00 pm. Hollins left Smith in the drunk tank. At 1:15 am, Stogner asked Hollins for the keys to Smith's cell. After unlocking the door, Stogner found Smith lying on the floor. Smith had used his shoelaces to hang himself, the shoelaces apparently had broken, and Smith's body had fallen to the floor. Stogner checked Smith's pulse and told Hollins that Smith was dead. Hollins also checked Smith's pulse and found none. Hollins then radioed Officers Louge, Ryals, and Bryant to immediately come to the Old Jail. As soon as Louge, Ryals, and Bryant arrived, Ryals entered the drunk tank and checked both Smith's wrist and carotid artery for a pulse, again finding none. Louge directed Hollins to call for emergency personnel and to notify Sheriff Stringer. After calling for an ambulance and notifying Sheriff Stringer, Hollins took pictures of Smith's body and the drunk tank. At no time did any of the officers attempt to resuscitate Smith or remove the shoelace from Smith's neck with which Smith had hung himself.

Fifteen to twenty minutes after Stogner discovered Smith's body, the paramedics arrived. The paramedics cut the shoelace from Smith's neck and escorted him to the hospital where Smith was pronounced dead.

On August 31, 2004, Renisa Brumfield, on behalf of herself and the heirs of Smith's estate, sued Marion County and Sheriff Stringer, Hollins, Louge, Thornhill, and Bryant in their individual and official capacities under 42 U.S.C. § 1983. On July 19, 2006, the district court awarded summary judgment to each defendant sued in his individual capacity on the basis of qualified immunity. However, on August 29, 2007, the district court denied summary judgment to the individual defendants in their official capacities and to Marion County, reasoning that genuine issues of material fact existed regarding whether Marion County was liable under § 1983 for practicing a custom or policy of deliberate indifference toward the needs of its pretrial detainees. The case went to trial on November 13, 2007.

After Brumfield rested her case, the district court directed a verdict in favor of all remaining defendants based on Brumfield's failure to prove a violation of any constitutional right. The district court also found a lack of causal connection between the failure to train or implement policy and Smith's suicide, and no evidence demonstrating a pattern of similar prior incidences necessary to demonstrate objective deliberate indifference by Marion County. The district court entered a final order and judgment disposing of Brumfield's claims.

Brumfield now appeals, arguing that the district court erred in three respects: (1) by granting summary judgment to Sheriff Stringer in his individual capacity on the basis of qualified immunity; (2) by prohibiting Brumfield from presenting expert testimony indicating that Smith was alive when the paramedics arrived at the Old Jail; and (3) by directing a verdict for Marion County and all the individual defendants in their official capacities.

## II. DISCUSSION

A. Sheriff Stringer's Liability in his Individual Capacity

1. Standard of Review

We review a grant of summary judgment de novo, applying the same standard as the district court. Bolton v. City of Dallas, 472 F.3d 261, 263 (5th Cir. 2006). Our inquiry "is limited to the summary judgment record before the trial court." Topalian v. Ehrman, 954 F.2d 1125, 1132 n.10 (5th Cir. 1992). We must view the evidence in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986), and the movant has the burden of showing this Court that summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is appropriate where the competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Bolton, 472 F.3d at 263; see FED. R. CIV. P. 56(c). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

2. Analysis

"Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003). Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised.

> The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.

Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001) (internal quotation marks and citations omitted); see, e.g., Pierce v. Smith, 117

F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." (internal quotation marks omitted)). Thus, because Sheriff Stringer properly raised the issue of his qualified immunity, the burden of negating that defense lies with Brumfield, even on summary judgment. See Bazan, 246 F.3d at 490.

Claims of qualified immunity require a two-step analysis. We must first determine whether Brumfield has adduced sufficient evidence to raise a genuine issue of material fact suggesting Sheriff Stringer's conduct violated an actual constitutional right. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). If the answer is "no," then our analysis ends. Freeman v. Gore, 483 F.3d 404, 410-11 (5th Cir. 2007). If the answer is "yes," we must then consider "whether [Sheriff Stringer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." Id. at 411. "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000) (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)).

The district court held that Brumfield's § 1983 claims must fail as to Sheriff Stringer in his individual capacity because no evidence indicated Sheriff Stringer knew or directly participated in Smith's arrest or incarceration; therefore, he was entitled to qualified immunity. On appeal, Brumfield concedes that Sheriff Stringer neither deliberately harmed Smith nor personally participated in the events of the evening in question. Instead, Brumfield argues that Sheriff Stringer is not entitled to qualified immunity because he is individually liable as a supervisory official. Brumfield contends that Sheriff Stringer was deliberately indifferent to Smith's constitutional rights by: (1) failing to adopt any written policy pertaining to inmate supervision or medical

6

care, and (2) failing to train or supervise the jailers he hired. We will address in turn each of Brumfield's two contentions.

a. Failure to Promulgate Policy Concerning Inmate Supervision and Medical Care

Pretrial detainees have a constitutional right to medical care and protection from harm during their confinement. Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc) ("Hare I"). Brumfield alleged that Sheriff Stringer's failure to implement policies pertaining to inmate supervision and medical care deprived Smith of his constitutional right to adequate protection and reasonable medical care. While this allegation alone might be enough to survive a motion to dismiss, in response to a summary judgment motion, Brumfield must bring forward sufficient evidence to raise a fact issue on this point. McClendon, 305 F.3d at 323.

Brumfield has failed to raise a genuine issue of material fact demonstrating that Sheriff Stringer is not entitled to qualified immunity on the basis of failing to promulgate policies[3] concerning inmate supervision and medical care. Brumfield places great weight on the fact that Sheriff Stringer had no written policies and procedures at the Old Jail similar to the ones at a nearby facility known as the "New Jail." From this, she concludes that Sheriff Stringer implemented no policies at all. But we have acknowledged that "the validity of prison policies is not dependent on whether they are written or verbal. A policy is a policy . . . ." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998). Indeed, verbal policies existed concerning inmate supervision and medical care,

---

[3] This court defines an "official policy" as:

either a policy statement, ordinance, regulation, etc., that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy.

Cox v. City of Dallas, 430 F.3d 734, 748 (5th Cir. 2005).

and Sheriff Stringer, Bryant, Louge, Hollins, and Thornhill all testified to that effect.

Specifically, at least one jailer was to be on duty at all times. When an arresting officer booked a detainee who was over the legal limit of intoxication, the detainee would be administered a breathalyzer test and then sent through the booking process. After an officer obtained the detainee's personal information and specified personal belongings, the intoxicated detainee was to be placed in the "drunk tank," a cell ten feet away from the jailer's desk. According to the summary judgment evidence, if a detainee was placed in the drunk tank after 10:00 pm, the earliest release time would be 6:00 am the following morning; for detainees brought in before 10:00 pm, the amount of time spent in the drunk tank varied depending on the detainee's condition. If the detainee appeared suicidal, then the detainee was to be placed in the observation cell (a plexiglass room directly next to the jailer's desk). If a detainee asked for assistance, an inmate trusty checked on the detainee and reported back to the jailer with any of the detainee's concerns or requests. If any of those concerns or requests stemmed from a detainee's immediate need for medical attention, the jailers were to either call medical personnel at the New Jail or, if necessary, call for an ambulance; to notify a supervising officer; and to notify Sheriff Stringer himself. While the Old Jail's policies gave officers discretion in performing their duties and lacked the specific directives Brumfield would have preferred to have been in place, policies nonetheless existed.

Even assuming arguendo that Brumfield has raised a fact issue on the first step of the qualified immunity analysis, her evidence fails the second step. As discussed above, the second step of our inquiry requires us to determine whether Sheriff Stringer's conduct was objectively unreasonable in light of clearly established law at the time of Smith's death. Freeman, 483 F.3d at 411. The dispositive inquiry is "whether it would be clear to a reasonable officer that

his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). At the time of Smith's death, clearly established law required that in a claim alleging failure to promulgate policy as a basis for § 1983 liability, the failure must be "an intentional choice" and amount to subjective deliberate indifference.[4] Rhyne v. Henderson County, 973 F.2d 386, 392 (5th Cir. 1992). In other words, it must be "'obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights.'" Evans v. City of Marlin, 986 F.2d 104, 108 (5th Cir. 1993) (quoting Rhyne, 973 F.2d at 392). In the qualified immunity analysis, "[t]he subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident . . . [U]nder that standard . . . actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable." Hare v. City of Corinth, 135 F.3d 320, 328 (5th Cir. 1998) ("Hare II") (emphasis in original). Brumfield has failed to offer any evidence to support such a finding.[5]

---

[4] As explained by this Court in Flores v. City of Hardeman, 124 F.3d 736 (5th Cir. 1997): To determine the appropriate standard to apply in analyzing constitutional challenges by pretrial detainees, we must first classify the challenge as an attack on a "condition of confinement" or as an "episodic act or omission." A "condition of confinement" case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." . . . [I]f the complained-of harm is a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. In an episodic act or omission case, an actor is usually interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom or rule (or lack thereof) of the municipality that permitted or caused the act or omission. The detainee in such a case must establish that the official(s) acted with subjective deliberate indifference to prove a violation of his constitutional rights. Flores, 124 F.3d at 738 (internal citations omitted). This case fits squarely within the definition of an "episodic act or omission case."

[5] Indeed, with respect to Smith specifically, the jail personnel had prior experience with him on other occasions when he was intoxicated. In all those prior occasions, he did nothing to suggest he was suicidal or likely to hurt himself.

b.    Failure to Train/Supervise

Brumfield also contends that Sheriff Stringer is not entitled to qualified immunity because he failed to train or supervise his subordinates. As we noted in our discussion of Brumfield's first contention, her allegation alone might be sufficient to survive a motion to dismiss, but to survive summary judgment, Brumfield must bring forward sufficient evidence to raise a genuine issue of material fact on this point. McClendon, 305 F.3d at 323.

Brumfield has failed to raise a genuine issue of material fact demonstrating that Sheriff Stringer is not entitled to qualified immunity on the basis of failing to train or supervise his subordinates. The summary judgment record does not reflect a failure to train or supervise. Sheriff Stringer, Thornhill, and Hollins testified that deputies were first trained at the New Jail and then sent to work at the Old Jail. Thornhill and Louge further testified that they received "on-the-job training." While there may be disparities in the deputies' testimony regarding the extent of their training, there is no question that they did indeed receive training. Brumfield's dissatisfaction with Sheriff Stringer's training efforts cannot negate the fact that the training occurred.

Even assuming arguendo that Brumfield has raised a fact issue on the first step of the qualified immunity analysis, her evidence again fails the second step. The law at the time of Smith's death pertaining to § 1983 liability for failure to train or supervise provided:

> A sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.[6]

---

[6] It is undisputed that Sheriff Stringer was not personally involved in either Smith's arrest or incarceration.

Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001). In this specific context, a showing of deliberate indifference generally requires "a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights.'" Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003) (quoting Thompson, 245 F.3d at 459). "[A] plaintiff [must] demonstrate 'at least a pattern of similar violations'" arising from training or supervising "that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" Id. (quoting Thompson, 245 F.3d at 459). A limited exception for single-incident liability exists only "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." Id. at 372.

Brumfield has failed to offer any evidence to support such a finding. The summary judgment record does not support a causal connection between the alleged failure to train and Smith's tragic death. Nor does the summary judgment evidence indicate a pattern of similar violations or anything to support application of single-incident liability. At bottom, Brumfield has failed to raise a fact issue on the question of whether Sheriff Stringer's training and supervising efforts were deliberately indifferent.

B.    Admissibility of Medical Evidence Indicating that Smith was Alive When the Paramedics Arrived at the Old Jail

Brumfield also argues that the district court erroneously precluded expert testimony from an undesignated expert that could have established Smith was still clinically alive when the paramedics arrived at the Old Jail.

1.    Standard of Review

We review a district court's ruling on admissibility of evidence for abuse of discretion, United States v. Hall, 500 F.3d 439, 443 (5th Cir. 2007), and will not disturb the ruling unless manifestly erroneous. United States v. Tucker, 345

F.3d 320, 326 (5th Cir. 2003). Federal Rule of Civil Procedure 26(a)(2) requires that a party disclose to the other parties the identity of any expert witness it may use at trial. If a party fails to designate an expert witness, Federal Rule of Civil Procedure 37 prohibits the party from using that witness to supply evidence at a motion, hearing, or trial unless the failure was substantially justified or harmless. In reviewing the district court's exercise of discretion to exclude experts not properly designated, this court considers four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. Geiserman v. MacDonald, 893 F.2d 787, 791 (5th Cir. 1990). "If it is found that the district court abused its discretion in denying the admission of expert evidence, [this Court] must then consider whether the error was harmless, affirming the judgment unless the ruling affected a substantial right of the complaining party." Id.

2. Analysis

At trial, Brumfield called Dr. Kevin Holmes, the treating physician at the Marion County Hospital on the night of Smith's death, to establish that Smith was in V-fib.[7] The district court first ruled that because Brumfield failed to designate Dr. Holmes as an expert, he would not be permitted to offer Dr. Holmes's testimony. The district court alternatively ruled that whether or not Smith was in V-fib when the paramedics arrived was irrelevant to the question of Marion County's liability.

Brumfield concedes that Dr. Holmes was not designated as an expert, but notes that Dr. Holmes was listed as a potential fact witness throughout discovery. Brumfield contends that Dr. Holmes's testimony, coupled with the

---

[7] According to Dr. Holmes's proffered testimony, ventricular fibrillation, or "V-fib," is "the disorganized electrical activity within the heart. The system is basically trying to send a current through to tell the heart to beat, but it's not functional. It's just a chaotic discharge. It's not able to generate a signal that will cause a normal beat of the heart."

testimony of the paramedic who treated Smith,[8] would have established that Smith was not dead when the paramedics arrived at the Old Jail. According to Brumfield, the trial court effectively prevented her from presenting direct evidence of Marion County's deliberate indifference and unconstitutional conduct.

The district court did not abuse its discretion by excluding Dr. Holmes's testimony. Brumfield did not designate Dr. Holmes as an expert. While Dr. Holmes's designation as a person with knowledge of relevant facts might have allowed him to testify to his observations of Smith, testimony about his conclusion as to whether it was more likely than not that Smith would have lived if given treatment more quickly – the only potentially relevant testimony – would constitute expert testimony. Brumfield offered no explanation for her failure to designate Dr. Holmes as an expert other than to say that he was listed as a potential (fact) witness. Furthermore, as discussed below, testimony as to whether the jailers' failure to cut the shoelace off of Smith's neck caused Smith's death is irrelevant to the determination of Marion County's liability for denial of reasonable medical care under the facts of this case. Allowing this testimony would not have altered the outcome of the directed verdict motion. Thus, any error in excluding Dr. Holmes's expert testimony was harmless.

C.    District Court's Grant of a Directed Verdict to Marion County and all Defendants in their Official Capacities.
    1.    Standard of Review

We review de novo a district court's grant of a directed verdict, applying the same standard as the district court. Becker v. PaineWebber, Inc., 962 F.2d 524, 526 (5th Cir. 1992). We must view the facts and all reasonable inferences

---

[8] Brumfield notes in her brief that she was initially unable to locate the paramedics who treated Smith and therefore had not called them as witnesses. During trial, however, Brumfield located one of the two paramedics. The district court informed Brumfield that the paramedic's testimony was likewise irrelevant and thus there was no need for Brumfield to call the paramedic to testify.

in the light most favorable to the non-movant. Turner v. Purina Mills, Inc., 989 F.2d 1419, 1421 (5th Cir. 1993). A directed verdict is appropriate after a party has been fully heard on an issue and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. FED. R. CIV. P. 50(a)(1).

2.    Analysis

Municipal liability[9] under § 1983 may not be predicated on respondeat superior. Pitrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). Rather, the plaintiff must demonstrate: "(1) that the municipal employee violated [the pretrial detainee's] clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." Olabisiomotosho v. City of Houston, 185 F.3d 521, 528-29 (5th Cir. 1999). To demonstrate subjective deliberate indifference under the first prong, the plaintiff must show that the municipal employee "knew of and disregarded an excessive risk to the [detainee's] health or safety." Gibbs v. Grimmette, 254 F.3d 545, 549 (5th Cir. 2001). Under the second prong, the plaintiff must identify a policymaker and show that an official policy is the "moving force" behind the municipal employee's allegedly unconstitutional act. Pitrowski, 237 F.3d at 578. The objective deliberate indifference standard "considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the [pretrial detainee's] rights." Lawson v. Dallas County, 286 F.3d 257, 264 (5th Cir. 2002); see Burge, 336 F.3d at 370 ("Knowledge on the part of a policy maker, [either actual or constructive,] that a constitutional violation will most likely

---

[9] Because suit against the jailers in their official capacities is, in essence, a suit against the municipality, our analysis as to Marion County applies equally to the jailers sued in their official capacities. See Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005).

result from a given official custom or policy is a sine qua non of municipal liability under section 1983.").

The district court directed a verdict for Marion County and all of the individual defendants in their official capacities. According to the district court, the facts testified to at trial – that Smith was drunk, that Smith committed suicide within the first twenty-four hours of his incarceration, and that Smith was permitted to keep his shoelaces – did not give rise to a constitutional violation. The district court further found that none of the evidence demonstrated a known danger within the awareness of the jailers, Sheriff Stringer, or the deputies. Absent a known danger, the district court concluded that these public officials could not have been deliberately indifferent to a known danger. The district court also noted that the Old Jail had operated for seventy years without constitutional violations, and that there was a complete lack of evidence demonstrating any specific harm or danger to Smith. Accordingly, the district court granted Defendants' motion for a directed verdict.

On appeal, Brumfield argues three grounds for Marion County's liability. First, Brumfield contends that by failing to adopt policies regarding inmate supervision or medical care, Sheriff Stringer, and consequently Marion County, violated Smith's constitutional rights. As previously discussed, however, Sheriff Stringer did not fail to promulgate policies; the Old Jail had verbal policies in place concerning inmate supervision and how to respond to inmates in need of medical care. Because Sheriff Stringer did not violate Smith's constitutional rights by failing to promulgate such policies, Marion County is not liable under § 1983 on these grounds.

Second, Brumfield contends that Smith's death was such an obvious and likely consequence of Sheriff Stringer's failure to train or supervise that Marion County is liable under § 1983. A municipality's failure to train its officers can give rise to § 1983 liability. City of Canton v. Harris, 489 U.S. 378, 389 (1989);

Pineda v. City of Houston, 291 F.3d 325, 331 (5th Cir. 2002). To successfully hold Marion County liable on this basis, Brumfield must show that (1) Sheriff Stringer failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of Smith's rights; and (3) the failure to train or supervise constituted deliberate indifference to Smith's constitutional rights. See Burge, 336 F.3d at 370; Pineda, 291 F.3d at 331; Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir. 2000). As we observed earlier in this opinion, Sheriff Stringer did not fail to train or supervise his subordinates. Without a failure to train or supervise, Brumfield cannot satisfy the first element of municipal liability and, consequently, Marion County cannot be held liable under § 1983.

Finally, Brumfield argues that because Marion County deputies failed to undertake any life-saving measures on Smith, they violated Smith's constitutional right to reasonable medical care with subjective deliberate indifference and, consequently, municipal liability is appropriate.[10] The facts at issue here are undoubtedly tragic – the deputies saw Smith lying on the floor in his cell; three different people felt for a pulse, found none and assumed Smith was dead; they neither removed the shoestring noose from Smith's neck nor attempted to resuscitate him; they took pictures of Smith's body and the scene of the suicide; and twenty minutes elapsed before the ambulance crew arrived, removed the noose from Smith's neck, and began life-saving techniques. While the deputies' conclusion that Smith was already dead and their resulting failure to make any attempt to save Smith's life are arguably negligent, negligent conduct alone does not amount to deliberate indifference. See Hare I, 74 F.3d at

---

[10] Appellant relies upon the Sixth Circuit case of Hefflin v. Stewart County, 958 F.2d 709, 712-14 (6th Cir. 1993), for the proposition that failure to cut the noose from a suicidal prisoner's neck was deliberate indifference. However, Hefflin applied an objective test to this issue, whereas the Fifth Circuit precedent of Hare I applied a subjective test. Thus, Hefflin is of limited persuasive value here.

650 (providing that negligence is insufficient to meet the standard for deliberate indifference).  More importantly, Brumfield has presented no evidence pointing to a Marion County custom or policy that was the moving force behind the deputies' conduct.  Accordingly, Marion County is not liable under § 1983 for denial of reasonable medical care.

## III.  CONCLUSION

We hold that (1) the district court properly granted summary judgment in favor of Sheriff Stringer because his conduct was not objectively unreasonable against the backdrop of the clearly established legal standard of subjective deliberate indifference; (2) the district court properly excluded Dr. Holmes's expert testimony concerning whether Smith was in V-fib on the bases that Brumfield failed to designate Dr. Holmes as an expert and that such testimony was irrelevant; and (3) the district court properly granted a directed verdict in favor of Marion County because there was no basis for municipal liability under § 1983.  Accordingly, we AFFIRM.