# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 18-11415

———

United States Court of Appeals
Fifth Circuit

**FILED**
September 10, 2019

Lyle W. Cayce
Clerk

UNIVERSITY BAPTIST CHURCH OF FORT WORTH,

Plaintiff - Appellant

v.

LEXINGTON INSURANCE COMPANY,

Defendant - Appellee

———

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:17-CV-962

———

Before STEWART, Chief Judge, and JONES, and OWEN, Circuit Judges.

PER CURIAM:[*]

In this insurance dispute between University Baptist Church of Fort Worth ("UBC") and its insurance company, Lexington,[1] UBC appeals from the district court's adverse summary judgment and maintains that for summary judgment purposes, it adequately supported a breach of contract claim, violations of the Texas Insurance Code and the Deceptive Trade Practices Act

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The court also heard oral argument in the related case between UBC and York Risk Services, the insurance adjustor. *See University Baptist Church of Fort Worth v. York Risk Servs.*, No. 18-10713 (N.D. Tex. filed Jun. 14, 2018).

No. 18-11415

("DTPA"), and a violation of the duty of good faith and fair dealing. We AFFIRM the judgment of the district court.

## 1. Background

Following storm damage to UBC's tile roof, the church submitted an insurance claim with Lexington. In addition to coverage for storm and other damage, the insurance policy included a code and ordinance endorsement, which covered up to $250,000 for any repairs deemed necessary to bring the building into compliance with city building codes. The city of Fort Worth required UBC to do code upgrade work, which was performed by the church's roofer, Jeff Eubank Roofing. Eubank initially submitted a fixed bid for about $286,000, but the insurance adjuster had doubts about the accuracy of this bid. After requesting more information, and realizing, as both parties admit, that Eubank's bid was seriously deficient because of the construction's unique features, the adjuster directed the roofer to perform the work on a time-and-materials basis. The church maintains it could have held the contractor to his original bid and had the work completed for $35,798 as its out-of-pocket costs above the policy limit.

Although Lexington eventually paid UBC the policy limits, a total amount exceeding $852,000 for the repairs, the acceptance of the new bid meant the church had to bear an additional $614,148.49 in out-of-pocket costs. UBC does not argue that the initial bid was an accurate bid, or that the time and materials charge was inflated, or that it would not have otherwise had this work performed. Rather, UBC claims that because Eubank was willing to honor its initial fixed bid, UBC could have had the work completed for $35,798 in out-of-pocket costs had Lexington approved UBC's insurance claim at that time. UBC contends that Lexington's actions in delaying the approval and payment of the insurance claim thus denied UBC of the benefit of its bargain with Eubank in violation of (1) five sections of the Texas Insurance Code;

2

No. 18-11415

(2) Lexington's duty of good faith and fair dealing; and (3) the DTPA in virtue of the Insurance Code violations.  Finally, UBC asserts a breach of contract claim arising from the use of a different type of tile for the roof repair.

The district court granted Lexington's motion for summary judgment, and UBC timely appealed.  This court reviews summary judgments *de novo*, under the same standards applicable to the district court. *See, e.g., Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).  Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, (1986).  The evidence must be viewed "in the light most favorable to the non-moving party," and "the movant has the burden of showing this Court that summary judgment is appropriate." *Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986)).

### 2.  Insurance Code and DTPA Claims

First, UBC claims that Lexington violated five sections of the Texas Insurance Code: §§ 541.060(a)(1), (a)(2), (a)(3), (a)(7), and § 542.058.

Section 541.060(a)(1) prohibits "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue." Tex. Ins. Code § 541.060 (Lexis Advance 2016).  As the court observed, UBC did not allege any violation of this section in its complaint and raised it for the first time in its response to Lexington's motion for summary judgment.  On the merits, the district court rejected the claim as a matter of law because under Texas law "post loss statements regarding coverage are not misrepresentations under the Insurance Code." *See Aguilar v. State Farm Lloyds*, 4:15-CV-565-A, 2015 WL 5714654, at *3 (N.D. Tex. Sept. 28, 2015) (citing *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 445–56 (Tex. 2012)).  While UBC argues that this is

3

inconsistent with the "plain language" of the statute, UBC cites no cases to support its reading. And, fatally, UBC offered no evidence of any misrepresentation by Lexington.

UBC's Section 541.060(a)(2) claim alleged that Lexington "fail[ed] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear . . . ." Tex. Ins. Code § 541.060 (Lexis Advance 2016). But there was no "settlement" because Lexington paid the policy proceeds in full after the repairs were completed, pursuant to the terms of the policy.[2]

The district court also properly granted summary judgment for Lexington on § 541.060(a)(3), a provision that prohibits "failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim." Tex. Ins. Code § 541.060 (Lexis Advance 2016). UBC provided no evidence that Lexington ever denied any claim. It is undisputed that Lexington paid $852,149.52 to UBC, including the full $250,000 limit of the code and ordinance endorsement. UBC argues that because Lexington did not pay the policy limits quicker, i.e., in time to accept Eubank's lower bid, UBC was denied the benefit of its bargain with Eubank. But as was just noted, Lexington owed no payment to UBC until after the repairs had been made. No further explanation was required, much less settlement by Lexington, for its compliance with the policy's explicit terms.

---

[2] The Policy terms make clear that payment was due only after the repair or replacement: "[w]e will not pay for the Increased Cost of Construction: (i) Until the property is actually repaired or replaced, at the same or another premises; and (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years." UBC does not argue that this provision of the policy otherwise violates Section 541.060(a)(3).

No. 18-11415

UBC's Section 541.060(a)(7) claim, grounded in Lexington's alleged "refus[al] to pay a claim without conducting a reasonable investigation with respect to the claim.," Tex. Ins. Code § 541.060 (Lexis Advance 2016), likewise lacks merit because Lexington never refused to pay any claim under the policy. UBC faults Lexington for failing to obtain competing bids, reasoning that such conduct is tantamount to pursuing an insufficient investigation, but the church offers no cases or other law suggesting that this can support liability under the Code. If anything, it was the adjuster's further investigation into Eubank's bid that prompted the switch to a time-and-materials approach.

Finally, because Lexington paid the claim in full according to the policy's terms, the district court properly granted summary judgment for Lexington under Section 542.058, which prohibits delay in the payment of an insurance claim: "Except as otherwise provided, if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060." Tex. Ins. Code § 542.058 (Lexis Advance 2016). UBC again points to no case or other law suggesting that these policy terms violated the Insurance Code.

The DTPA claims, being wholly dependent on the possibility of Lexington's having violated the Texas Insurance Code, must fail along with the demise of the Insurance Code claims.

### 3. Duty of Good Faith and Fair Dealing Claim

Second, UBC claims that Lexington violated its duty of good faith and fair dealing by denying UBC's claim when Lexington's liability had become reasonably clear. *See State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). To prevail on this claim, UBC must show that Lexington had

no reasonable basis for the denial or delay in payment of a claim and that Lexington knew or should have known of that fact. *See Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 389 (Tex.App.–Houston [1st Dist.] 2011, no pet.). But under Texas law "there is no duty beyond the contract itself." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997). Lexington complied with the policy by paying the policy limits when the repairs were completed. UBC has provided no evidence that Lexington denied any claim. UBC seems to suggest that Lexington could not have switched to a time-and-materials cost basis in good faith without explaining the risk of exceeding policy limits. But an insured party is deemed to know the contents of its insurance policy, including policy limits. *See Morris County Nat'l Bank v. John Deere Ins. Co.*, 254 F.3d 538, 541 (5th Cir. 2001).

**4. Breach of Contract Claim**

Finally, UBC claims that Lexington breached the parties' contract by providing an inferior replacement tile roof. This claim relates to only one portion of the tile replacement following the storm damage. UBC asserts that because Lexington replaced the Ludowicki tile that was on the building with allegedly inferior Verea tile, Lexington did not provide a "like kind and quality repair" to the roof under the terms of the policy. UBC claims that the district court improperly dismissed its expert and relied on Lexington's expert, when there was a fact question for a jury.

We disagree with UBC's proffered interpretation of the insurance policy. Lexington agreed to pay for losses according to the following terms:

> a.　In the event of loss or damage covered by
> this Coverage
> Form, at our option, [Insurer] will either:
> (1) Pay the value of lost or damaged property;

No. 18-11415

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below,

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

[Insurer] will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

Lexington thus had the option to choose among these options for satisfying its obligations, and it opted to completely replace the roof with Verea tile.

The parties dispute whether Verea tile was of "like kind and quality" under the policy, and both parties offered expert testimony on this issue. UBC's expert, Allen Seymour, testified that he had to use Verea tile, which was inferior to Ludowicki tile, because Forman, the adjuster, would not approve the Ludowicki tile. Lexington's expert, Brett Lochridge, testified that UBC received better than a like, kind and quality *repair* because Lexington *replaced* the roof with new clay tile, rather than merely repairing the damaged portion of the roof with new clay tiles or salvaged clay tiles. UBC did not offer evidence to contradict Lochridge's account of the repair process, which demonstrated Lexington's having used the replacement rather than repair option for the roof. The district court accordingly reasoned that Lochridge's testimony showed that UBC could not prove damages as a matter of law.

UBC argues that the question how to weigh this competing evidence was for a jury to determine, but the church does not respond to the rationale that

No. 18-11415

UBC received a full *replacement* roof, rather than merely a *repair* of a subset of the tile, and that this option was available to the insurer. Additionally, UBC has offered no evidence of damages, which is an essential element of their claim. *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655 & n.26 (Tex. 2009). Summary judgment for Lexington on the breach of contract claim was thus proper.

## Conclusion

For the foregoing reasons, the district court's order granting summary judgment for Lexington is **AFFIRMED**.