# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20679

United States Court of Appeals
Fifth Circuit

**FILED**

August 15, 2019

Lyle W. Cayce
Clerk

STEVEN KURT BAUGHMAN,

> Plaintiff - Appellant

v.

RON HICKMAN; DOCTOR MARCUS GUICE, Medical Doctor; LICENSED VOCATIONAL NURSE K. JOHNSON; HARRIS COUNTY, TEXAS; DEPUTY  DURHAM; LICENSED VOCATIONAL NURSE JANE DOE; HENRI MADIKO, Licensed Vocational Nurse; DEPUTY RICHARD PRUITT; DAVID SOLCE, Doctor of Osteopathic Medicine; MEDICAL DOCTOR M. HAQUE; STEPHEN WILLIAMS, Medical Doctor,

> Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

A pretrial detainee sued Harris County, Texas and county jail officials for allegedly violating his constitutional rights by being deliberately indifferent to his health, safety, and medical needs.  He also sued a prison nurse for retaliation and Harris County for negligence under Texas law.  The district court dismissed some of the claims on the pleadings and granted summary judgment for the defendants on all others.  We AFFIRM.

No. 17-20679

## FACTUAL AND PROCEDURAL BACKGROUND

Steven Baughman was in custody of the Harris County, Texas Sheriff's Office at the time the events relevant to this suit took place. On November 11, 2015, sheriff deputies transported him to a hospital from which he was discharged the next day. Deputy Sheriff Richard Pruitt picked Baughman up at the hospital in a sheriff's-office van to return him to jail. Baughman alleges that during this ride, Deputy Pruitt drove recklessly and caused Baughman, who was handcuffed, shackled, and not secured by a seatbelt, to be thrown out of his seat and injured when the van lurched after hitting a pothole or speed bump.

Baughman further claims that once back at the jail, he sought medical attention but was rebuffed by the jail's medical staff. Those responsible are said to be Nurse Henri Madiko, unknown Nurse Jane Doe, Deputy Bryan Durham, and Drs. Stephan Williams and M. Haque. Baughman also alleges that Drs. Williams and Haque, along with another sheriff-office doctor, David Solce, generally denied him appropriate treatment.

Finally, Baughman claims that two and a half weeks after the van ride, another nurse, Kellie Johnson, refused to administer his medication and then retaliated against him after he filed an administrative complaint against her.

Proceeding *pro se*, Baughman sued Deputy Pruitt, Nurse Madiko, Nurse Jane Doe, Deputy Durham, Dr. Williams, Dr. Solce, and Nurse Johnson in their individual capacities. He also sued the jail's interim Executive Director for Health Services Dr. Marcus Guice and the former sheriff of Harris County Ron Hickman for their supervisory roles. He brought his suit under 42 U.S.C. § 1983, claiming deliberate indifference to his health, safety, and medical needs. Baughman also asserted a retaliation claim against Nurse Johnson. Seeking county liability, he further sued Harris County along with Dr. Guice and Sheriff Hickman in their official capacities. Last, Baughman asserted a

2

No. 17-20679

negligence claim under the Texas Tort Claims Act against Harris County. Baughman requested a declaration that his rights had been violated along with injunctive relief and damages.

Deputy Pruitt, Nurse Madiko, Deputy Durham, Sheriff Hickman, Harris County, Dr. Guice, and Nurse Johnson filed a joint motion for summary judgment. Drs. Williams and Haque filed separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Nurse Jane Doe and Doctor Solce were never served, but the district court evaluated the claims against them under the Prison Litigation Reform Act. The district court dismissed all of the federal claims and declined to exercise supplemental jurisdiction over the Texas-law claim. The district court also dismissed Baughman's motions for appointment of counsel and a stay.

Baughman appealed, contending the district court erred when it dismissed his claims and refused to appoint counsel. He also filed a motion for appointment of counsel in this court. Drs. Williams and Haque filed a motion in this court for leave to file a sur-reply or alternatively to strike portions of Baughman's reply brief. These motions have been carried with the case.

## DISCUSSION

The district court dismissed some of the claims as failing to state a claim and granted summary judgment on others. "A dismissal for failure to state a claim under Rule 12(b)(6) is reviewed '*de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff.'" *Whitaker v. Collier*, 862 F.3d 490, 496-97 (5th Cir. 2017) (citation omitted). A provision of the Prison Litigation Reform Act incorporates similar analysis by allowing dismissal if the suit is frivolous, malicious, or fails to state a claim. 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). A separate provision requiring a district court

3

to screen prisoner cases before docketing them allows dismissal for similar reasons. § 1915A(b)(1).

Our review of the grant of summary judgment is "*de novo*, viewing 'all facts and evidence in the light most favorable to the non-moving party'" and ensuring "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (citations omitted).

## I.    *Deliberate indifference claims*

Baughman relies on the Eighth and Fourteenth Amendments for his deliberate indifference claims.  The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees.  *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc).  In an affidavit Baughman filed in October 2017, he explained that he had been "awaiting trial since April 2, 2014."  The proper analysis of each category of claims is the same, as our "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners."  *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (citing *Hare*, 74 F.3d at 643-44).  The district court analyzed the case using pretrial detention cases, and we will as well.

We classify a pretrial detention due process claim according to whether it concerns a "condition of confinement" or an "episodic act or omission." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (citation omitted).  As is clear from our earlier explanation of the facts underlying Baughman's suit, he is making claims based on episodic acts or omissions.  For such claims, "we employ different standards depending on whether the liability of the individual defendant or the municipal defendant is at issue." *Id.*  Both standards require Baughman to "establish that the official(s) acted with

subjective deliberate indifference." *Id.* (citation omitted).   Resolving some arguably conflicting articulations of the required mental state for subjective deliberate indifference, the en banc court stated this test: "(1) 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) 'he must also draw the inference.'" *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The "official conduct must be 'wanton,' which is defined to mean 'reckless.'" *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).   Subjective deliberate indifference "is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).   County as opposed to individual liability has the additional requirement that the "violation resulted from a [county] policy or custom adopted and maintained with objective deliberate indifference." *Garza*, 922 F.3d at 634 (citation omitted).

### A.    Van ride

Baughman claims that the van driver, Deputy Pruitt, "operated the van recklessly . . . rapidly accelerating, rapidly braking, weaving in and out of traffic and fail[ing] to keep a proper look-out" with Baughman in the back on a steel bench where he was handcuffed, shackled, and not protected by a seatbelt.  Baughman's affidavit identifies the cause of his actual injury was the vehicle's hitting a pothole or speed bump because the driver failed to keep a proper lookout.  The "explosive impact from striking the road hazard injured [P]laintiff's back and catapulted [P]laintiff from the steel bench causing him to strike the ceiling of the security cage with the back of his head and neck, just before throwing him forward against the front wall of the security divider, as Deputy Pruitt hit the brakes."  Baughman in his complaint asserted that the

deputy had acknowledged that "other prisoners have been injured during transport, in a similar fashion."

Baughman contends his case is similar to a precedent in which we recognized sufficient allegations of deliberate indifference to survive *sua sponte* dismissal by the district court during the initial screening of a prisoner's case. *Rogers v. Boatright*, 709 F.3d 403, 408 (5th Cir. 2013); *see* 28 U.S.C. § 1915A (requiring review by the district court "as soon as practicable" of certain types of civil complaints by prisoners, and dismissal if justified). In that case, a corrections officer "was driving the van recklessly, darting in and out of traffic at high speeds while [the inmate] was caged in the back . . . [seated] on a narrow bench . . . shackled in leg irons and handcuffs . . . [with] no seatbelt;" the officer "was driving so fast that he had to brake hard to avoid hitting a vehicle in front of him;" the inmate "was thrown head-first into the end of the cage;" and one officer told another "that other inmates similarly had been injured." *Id.* at 406, 409.

Baughman also discusses a case from another circuit, *Brown v. Fortner*, 518 F.3d 552 (8th Cir. 2008). There, three prison vans were traveling in a convoy and collided with each other after going 75 miles per hour in a 55 mile-per-hour zone and "pass[ing] other vehicles at inappropriate times." *Id.* at 556. The driver in the second van had not buckled the seatbelt of the plaintiff-inmate, who was shackled, and he ignored pleas of multiple inmates to slow down, even "turn[ing] up the radio" after one request. *Id.* There was no evidence, however, that the driver of the third van "was asked to slow down and refused" or knew that the plaintiff-inmate in the second van was not in a seatbelt. *Id.* at 560. Finding that knowledge was the "critical difference between" the drivers of the two vans, the Eighth Circuit held there was enough evidence at the summary judgment stage to show the driver of the second van was deliberately indifferent but not the driver of the third. *Id.* at 560-61.

No. 17-20679

In the present case, Deputy Pruitt moved for summary judgment. Unlike in our *Rogers* decision, which we held was improperly dismissed at the screening stage, Baughman had to demonstrate genuine issues of material fact that ultimately could allow a finding that Deputy Pruitt was subjectively – actually – "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" from the manner in which he was driving the van, and that the deputy must also have drawn that inference yet continued to drive dangerously. *Williams*, 797 F.3d at 281 (citation omitted).

The evidence here on summary judgment included an Internal Affairs Investigative Report of March 1, 2016, a little more than three months after the November 12, 2015 van ride. That report concluded that the accusations against Pruitt for his driving were "unfounded." Baughman's affidavit acknowledged that he did not remember much about the event, as he had been given morphine and hydrocodone before the van ride and felt "knocked out." Affidavits from Deputy Pruitt and from the other officer in the van, Deputy Barnett, stated that neither officer could recall the specific ride. Medical records from the treatment Baughman received the day of the incident "indicated there was no evidence of injury and the overall findings [of his condition] were consistent with degenerative change." He had many medical problems well before this incident, perhaps affected by his weighing over 420 pounds.

Baughman's evidence largely came from a sworn statement he gave in December 2015. He states he was made to sit on a prison van bench that had no seatbelts. Pruitt was not shown to have any responsibility for the fact there were no seatbelts. Baughman stated generally that a deputy "drove in a reckless manner when he accelerated and decelerated rapidly." He then stated that the van hit a speed bump or pothole, causing Baughman to be propelled

7

from his seat. The statement does not detail further how the driving was reckless.

As to whether this is enough evidence of to create a fact issue of recklessness, we start with Deputy Pruitt's affidavit which identifies the route he took that day as including time on Interstate Highway 10. Speeding up and speeding down on an expressway (or on any road), even if done "rapidly," is not evidence of recklessness, nor is the inability to avoid a pothole or speed bump. At most, the sworn statement from someone sitting in the back of a van claimed that the van was being driven with rapid speed changes (though not necessarily speeding), and when the van hit something in the road, the passenger was thrown from his seat. This is not evidence of driving in a manner creating a substantial risk of serious harm.

Further, the driver's subjective knowledge of reckless conduct is not addressed at all in the sworn statement. Though Baughman's complaint stated that deputy Pruitt "acknowledged other prisoners have been injured" in similar fashion, there is no mention of that in the sworn statement. Unlike in *Brown,* there is no evidence that Baughman asked to have a seatbelt fastened and Pruitt refused, or that he asked the deputy to slow down, or other evidence that would be some support for the deputy's awareness.

We conclude that there is insufficient information about Pruitt's driving and no evidence to allow a finding of Pruitt's actual knowledge that the manner in which he was driving created a substantial risk of harm. Merely negligent driving by Deputy Pruitt would not support a violation of a constitutional right. With the evidentiary burden on him at the summary judgment stage, Baughman has failed to marshal evidence in support of this claim.

No. 17-20679

B.     *Post-van ride incident*

After his return to the jail, Baughman fell asleep in his cell for several hours.  His complaint alleges that when he awoke later that evening, he was "in pain so severe he could not get out of his bunk," that he "was literally crying in pain," and that he "was not even able to roll onto his side due to the pain." Baughman alleges that after he got the attention of an officer, Nurse Madiko and two trustees arrived and carried Baughman to the medical unit.

Once there, Baughman alleges he "was not seen by a physician, was not questioned by a physician, and was not given a physical examination or even touched."  He asserts Nurse Jane Doe simply "shouted from the nurses station that Dr. Haque had already written . . . a prescription," commented that Baughman also had a bottom bunk pass, and instructed security personnel to remove Baughman.  In response, Nurse Madiko and Deputy Durham ordered Baughman to get off the stretcher.  Baughman admits he then "cause[d] a disturbance" that drew the attention of a supervising officer.  Baughman alleges that officer then ordered medical staff to attend to Baughman, after which Baughman was sent back to a hospital.  Baughman's complaint emphasizes the "severe" and readily apparent nature of the pain he experienced before and while at the medical unit.  The district court held Baughman failed to state a claim against any of the defendants.

For an episodic act claim relying on an alleged denial or delay of medical care, Baughman can show deliberate indifference by demonstrating that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Perniciaro v. Lea*, 901 F.3d 241, 258 (5th Cir. 2018) (citation omitted).  "A disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference, but the denial of recommended medical treatment is often

9

sufficient to show deliberate indifference." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018). We of course examine each defendant's actions individually. *See Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007).

The complaint recognizes Jane Doe knew that a "doctor had already written [Baughman] a prescription for Tylenol and issued him a bottom bunk pass" and that such knowledge formed the basis for her order that Baughman leave the medical area. That is, Baughman's allegations demonstrate Jane Doe was cognizant of his medical condition and treatment. Her purported orders for Baughman to leave the medical unit simply indicate a decision he did not need further medical attention. The agreement to this course of action by Nurse Madiko, who the complaint alleges accompanied and observed Baughman from his cell to the medical area, is similar. Baughman, in effect, disputes the nurses' decision on the medical attention he should have received, which is insufficient to state a claim. *Carlucci*, 884 F.3d at 538.

Regarding Doctors Williams and Haque, the complaint at most implies they were aware of Baughman's arrival to the medical unit but did not attend to him. This is not the same as alleging the doctors "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Perniciaro*, 901 F.3d at 258 (citation omitted). To the contrary, Baughman asserts nurses interacted with him and never notified a doctor that Baughman needed evaluation. Last, Baughman's complaint about Deputy Durham, a non-medically trained lay person, is that he observed Baughman in pain yet deferred to the decisions of multiple medical personnel. This fails to state a claim against Deputy Durham. *See Hester v. Donahoo*, 47 F.3d 425 (5th Cir. 1995); 5TH CIR. R. 47.5.3.

C.    *Subsequent medical treatment*

Baughman also alleges Drs. Solce, Williams, and Haque generally "denied [him] adequate pain medication" and "access to physical therapy." The district court held Baughman failed to state a claim. We agree as these "conclusory allegations . . . will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

Baughman further alleges that in a January 2016 meeting regarding his back pain, Dr. Haque told him to not "expect to receive pain management . . . or other services you could get if you weren't in jail;" that "pain is all in the mind and we must all learn to live with it;" and that the jail had "a limited budget and . . . so many prisoner[s'] problems . . . to deal with." Baughman alleges these statements "demonstrate a deliberately indifferent attitude and intent to deny adequate medical care." The district court dismissed these allegations for failure to state a claim. Again, we agree. Factual assertions concerning Dr. Haque's "attitude" and "intent" are not sufficient to allege he actually "refused to treat [Baughman], ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct." *Alderson*, 848 F.3d at 422 (citation omitted).

D.    *Incidents involving Nurse Johnson*

Baughman alleges that about two and a half weeks after the van ride, Nurse Johnson visited his cell to administer pain medication and demanded Baughman come to the door of the cell to receive it from her. Baughman asserts his pain was so great he was unable to walk, and Johnson responded that if he "wanted his medication . . . he needed to crawl to the door to get" it. An officer allegedly offered to give Baughman his medication in his cell, but Johnson refused to employ that option and left. Later, the complaint claims

the officer escorted Baughman toward the jail's medical unit to obtain his medicine. They encountered Johnson and her pill cart in the hall. Johnson again allegedly refused Baughman his medicine. The district court granted summary judgment in Johnson's favor. Johnson has raised qualified immunity, placing the burden on Baughman to "demonstrate genuine issues of material fact" regarding whether a violation of clearly established law occurred. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

Johnson acknowledges she did not dispense Baughman's medicine at his cell nor later when she encountered him in the hall. She asserts, however, she "did not feel comfortable entering [Baughman's] cell" nor administering his medication while he was unrestrained in the hallway. She swore in an affidavit that she "followed the Jail procedures" for "high security" in demanding Baughman receive the medication through an opening in his cell and refusing to dispense it later when Baughman "was not properly restrained" in the hall. She further swore Baughman could go to the medical unit to receive his medication, which Baughman's allegations also imply.

There is evidence in the record that Johnson was disciplined after Baughman filed a grievance over these incidents and that she was ordered to review the sheriff's office policies on the administration of medications. Baughman has not cited any evidence, though, that Johnson actually violated jail policy. Indeed, in her affidavit, which she swore out after the ordered review of the policies, she maintained that she had followed the appropriate jail procedures. Baughman has failed to demonstrate a genuine issue of material fact disputing that Johnson was hesitant to administer his medicine because of security concerns and jail policy. Refusing to give Baughman his medicine under these circumstances, especially when he could otherwise obtain it at the jail's medical unit, does not "show deliberate indifference to serious medical needs." *Alderson*, 848 F.3d at 422.

No. 17-20679

E.   *Official capacity defendants; Dr. Guice and Sheriff Hickman in their individual capacities*

Baughman contends the County, Dr. Guice, and Sheriff Hickman are liable "in their Official Capacities and Individual Capacities for policies at the [jail]." Because an underlying constitutional violation is required to impose liability on the governmental body or supervisory liability on Dr. Guice and Sheriff Hickman as individuals, Baughman's failure to demonstrate a constitutional violation regarding Deputy Pruitt, Nurse Jane Doe, Nurse Madiko, Deputy Durham, and Drs. Solce, Williams, and Haque disposes of any purported liability of Harris County, Dr. Guice, and Sheriff Hickman on those claims. *See Brumfield v. Hollins*, 551 F.3d 322, 327-29, 331-32 (5th Cir. 2008).

We resolved the claim against Nurse Johnson, however, by applying qualified immunity and shifting the evidentiary burden to Baughman. The benefits of that doctrine's application to Nurse Johnson do not extend to the County. *See Owen v. City of Independence*, 445 U.S. 622, 635-38 (1980). Further, Dr. Guice's and Sheriff Hickman's actions in their individual capacities were not part of our prior analysis. We consider, then, if Baughman has sufficient evidence to support claims against the County and Dr. Guice and Sheriff Hickman individually. These claims, whether seeking official or individual liability, require Baughman to connect the existence of a policy, widespread and settled practice, or a failure to train to a constitutional violation. *Brumfield*, 551 F.3d at 327-29, 331-32.

Baughman hinges his claims on allegations the jail's medical personnel routinely ignore prisoners' complaints, summarily turn them away when they seek medical attention, and refuse them pain treatment and therapy. Aside from the previously mentioned comments by Dr. Haque, which are insufficient, Baughman's allegations are not supported by specific facts. He directs us to review a few hundred pages of district court filings. "Although we liberally

13

construe briefs of *pro se* litigants and apply less stringent standards . . . *pro se* parties must still brief the issues and reasonably comply with the standards of Rule 28." *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). These claims were properly dismissed.

## II.    *Retaliation claims*

Baughman filed a grievance with the jail several days after the incidents involving Nurse Johnson. He alleges that she then retaliated by ordering his wheelchair be taken from his cell and by complaining to jail officials that medical personnel were improperly entering his cell to administer pain medication. The district court granted summary judgment to Johnson and the County Defendants.

The First Amendment protects a detainee from retaliation for filing grievances against prison officials. *See DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019). To sustain such a claim, a detainee "must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against [him] for his . . . exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Id.* (citation omitted). Even if an act might be "motivated by retaliatory intent," it is not a constitutional violation if the effects of it "are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). As in the deliberate indifference context, Baughman must tie a Section 1983 First Amendment claim to a county policy or lack of training to trigger official liability or individual liability for Dr. Guice and Sheriff Hickman. *Brumfield*, 551 F.3d at 331; *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).

Baughman does not even allege any harm from Johnson's purported retaliatory acts. The circumstances in which Nurse Johnson ordered his wheelchair be taken are unclear. Nonetheless, there is no evidence as to the

result of such an order. Examples of what is not said is whether another wheelchair was not timely found or that Baughman had to maneuver through the jail without one. There is also no evidence that Johnson's alleged reporting of medical personnel who entered Baughman's cell had any consequence for Baughman.

*III.     Supplemental jurisdiction; motions for counsel and leave to file sur-reply*

With all federal claims dismissed and diversity lacking, the district court refused to exercise supplemental jurisdiction over Baughman's state law claim. Such a refusal is generally not an abuse of discretion. *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016). In the absence of "exceptional circumstances," it is not an abuse of the district court's discretion not to appoint counsel. *Naranjo v. Thompson*, 809 F.3d 793, 801 (5th Cir. 2015). We also exercise our discretion not to appoint counsel now. *Cooper v. Sheriff, Lubbock Cnty.*, 929 F.2d 1078, 1084 (5th Cir. 1991).

AFFIRMED. All pending motions are DENIED.