# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 14, 2023

Lyle W. Cayce
Clerk

No. 22-60124

---

S. R., *a minor child by and through his guardian* KELLEY MUSGROVE *and as Wrongful Death Beneficiaries and as survivors of Miranda Musgrove*; A. A., *a minor child by and through her guardian* JUDY EVANS *and as Wrongful Death Beneficiaries and as survivors of Miranda Musgrove*,

*Plaintiffs—Appellants*,

*versus*

SCOTT COUNTY, MISSISSIPPI; ZAC HOLLAND; DEPUTY SHERIFF CODY MAY; JOHN DOES 1-5,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:19-CV-737

---

Before HIGGINBOTHAM, JONES, and OLDHAM, *Circuit Judges*.

PER CURIAM:*

This appeal involves the arrest and in-custody death of Miranda Musgrove. The district court granted defendants' motions for summary judgment. We affirm.

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

I.

A.

At 7:23 p.m. on July 10, 2018, a man called 911 to report a disturbance outside his house in Scott County, Mississippi. Sheriff's Deputy Zack Holland arrived at 7:38 p.m. and found Miranda Musgrove and Sheila Matthews screaming at one another. Musgrove was holding her four-year-old daughter, A.A.

Deputy Holland separated the women, called for backup, and talked with each woman individually to figure out what was going on. But as Musgrove tried to describe the situation to Deputy Holland, her story jumped among topics, and her movements were erratic. The same behavior continued throughout the encounter.

Deputy Holland asked Musgrove if she needed medical attention. Musgrove responded, "No." But after Musgrove's erratic behavior continued and Deputy Holland noticed that Musgrove had "white foam" coming from both sides of her mouth, Deputy Holland called an ambulance at 7:45 p.m. for "a female subject out here under the influence of something." A minute later, Deputy Holland radioed for an ambulance a second time, and Musgrove yelled, "I don't need an ambulance!" Around that time, A.A. began to cry and reach for Deputy Holland. Afraid for the child's safety, Deputy Holland asked Musgrove if he could hold A.A. while they talked. Musgrove agreed.

While Deputy Holland waited for the ambulance and backup to arrive, he tried again to piece together the situation. But Musgrove oscillated among talking about several disjointed topics, angrily threatening to hurt various onlookers in the neighborhood, and asking Deputy Holland for help. For example, she talked about getting in a fight with someone named Charlie and breaking his meth pipe; she said multiple times that she hadn't taken any of

her anxiety medicine; and she continued to repeat various other cryptic things like "I need to get away from here," "He did this to me," "I took something to drink and started feeling this way," and "Charlie set me up." The encounter largely continued in the same way—"Musgrove talking about Charlie, at times asking for help in serious tones, moving suddenly and unpredictably, and making threats."

Roughly 20 minutes after the encounter began, Sheriff's Deputy Cody May (the requested backup) arrived at the scene. The paramedics arrived soon after. The paramedics asked, "Have you had any drugs or alcohol today?" Musgrove said "no." The paramedics explained again that they were there to help and that Musgrove needed to be honest with them about whether she had consumed any drugs or alcohol. Again, she denied consuming any substances. Nevertheless, the paramedics asked Musgrove multiple times if she wanted to go to the hospital and tried to convince her to go with them. Musgrove declined.

After Musgrove became even more aggressive and accusatory, the Deputies placed her under arrest for public intoxication, disorderly conduct, and child endangerment. The Deputies then repeatedly asked Musgrove whether a family member could pick up A.A. to avoid calling the Mississippi Department of Human Services ("DHS"). Musgrove refused, so Deputy May called for a DHS worker. While they waited for DHS to dispatch someone, Deputy May continued to ask Musgrove to provide a family member's phone number. Eventually—after many minutes of Musgrove screaming at and accusing everyone at the scene—she calmed down and gave Deputy May a phone number for Judy Evans, A.A.'s great-grandmother.

Evans agreed to take custody of A.A. Deputy Holland transported A.A. and Musgrove together to meet Evans as well as Musgrove's mother, Kelley Danos. Musgrove was unruly throughout the trip. She screamed,

No. 22-60124

cursed, and even tried to kick the windows out of the patrol car. After the Deputies told her many times to calm down, she eventually laid down across the back seat and continued to mutter to herself. While Deputy Holland transitioned A.A. to Evans's car, Deputy May and Danos checked on Musgrove who "appeared to be asleep and still breathing normally." May informed Danos that the paramedics had already been called to check on Musgrove and that he would have the nurse assess her at the police station.

The Deputies then drove Musgrove to the Scott County Detention Center. Musgrove talked intermittently during the 15-mile ride and sat back up at one point before laying down again. When they arrived at the Detention Center at 10:13 p.m., Musgrove was found breathing but unresponsive in the backseat. The Deputies took her from the car, removed her handcuffs, sat her up in a chair, and called another ambulance. Musgrove ultimately died at the hospital from drug-induced cardiac arrest.

B.

Musgrove's heirs filed suit, alleging violations of Musgrove's Fourth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. The heirs also brought various claims under state law. Scott County and Deputies Holland and May moved for summary judgment.

The district court granted Defendants' summary judgment motions. The court held that the Deputies were entitled to qualified immunity because the undisputed facts did not support a prima facie case of deliberate indifference, the *Monell* claims against the County could not proceed without an underlying constitutional violation, *see, e.g.*, *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017) (applying *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)), and the state law claims were barred by the Mississippi Tort

No. 22-60124

Claims Act. Plaintiffs timely appealed.[1] "Our review is de novo." *Jackson v. Gautreaux*, 3 F.4th 182, 186 (5th Cir. 2021).

## II.

We hold Plaintiffs are not entitled to a trial on their Fourteenth Amendment claim against the Deputies, and without an underlying constitutional claim, they are also not entitled to a trial on their *Monell* claim against Scott County. We (A) articulate the relevant legal standards for "deliberate indifference" under the Fourteenth Amendment. Then we (B) conclude that Plaintiffs fail to carry their burden to overcome the Deputies' qualified immunity.

## A.

The Deputies asserted qualified immunity in the district court, so Plaintiffs bear the burden of overcoming the defense. *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016). To overcome it, Plaintiffs must prove "(1) that the official[s] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). We can base our decision on either prong. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As to the first prong, Plaintiffs present only a Fourteenth Amendment Due Process claim.[2] We have held that "due process" implicitly provides

---

[1] Plaintiffs have not raised the state law claims on appeal, so they are forfeited. *See Ruiz v. United States*, 160 F.3d 273, 276 (5th Cir. 1998).

[2] Plaintiffs allege violations of the Fourth, Eighth, and Fourteenth Amendments. But Plaintiffs' complaint lacks any allegation resembling a Fourth Amendment challenge. And the Eighth Amendment does not apply to detainees before a formal adjudication of guilt. *Revere v. Mass Gen. Hosp.*, 463 U.S. 239, 244 (1983). We have nonetheless held that pretrial detainees' Fourteenth Amendment claims are governed by the same legal

substantive protection against "deliberate indifference" to pretrial detainees' "serious medical needs." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001). "[A] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022) (quotation omitted). And "[d]eliberate indifference [to such needs] is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). Specifically, Plaintiffs must prove the officers (1) were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," (2) that they "actually drew the inference," and (3) that they "disregarded that risk." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (quotation omitted). In other words, Plaintiffs must show that Deputies Holland and May subjectively believed Musgrove was at a substantial risk of overdosing and that they nevertheless "refused to treat h[er], ignored h[er] complaints, intentionally treated h[er] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for [her] serious medical needs." *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

## B.

Plaintiffs do not meet their burden. Even if we assume Plaintiffs could satisfy the first deliberate-indifference prong, there is no way they could satisfy prongs two or three.

---

standards the Supreme Court uses for prisoners' Eighth Amendment claims. *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019). So our analysis of the Fourteenth Amendment subsumes Plaintiffs' claims under the Eighth.

1.

We start with prong two. Plaintiffs have not identified any evidence that would suggest Deputies Holland and May believed Musgrove had a substantial risk of overdosing. The only direct evidence comes from their depositions. There, both Deputies explained that they did not believe Musgrove was in immediate danger. Even if the Deputies were mistaken in this belief, it is well established that "the failure to alleviate a significant risk that the [Deputies] should have perceived, but did not[,] is insufficient to show deliberate indifference." *Domino*, 239 F.3d at 756; *see also Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (same).

Footage from the Deputies' bodycams does not change that result. True, Musgrove made sporadic claims for help and cryptically referred to a man named Charlie. But in context, Musgrove's statements would not suggest to a reasonable observer that she was at serious risk of overdosing. That is because Musgrove repeatedly told the Deputies and paramedics that she had not ingested any drugs or alcohol, that she was acting the way she was because she had not taken her anxiety medication, and that she did not need to go to the hospital. The videos clearly show that Musgrove was conscious, able to stand by herself, and capable of carrying on a conversation (albeit a disjointed one). Thus, the bodycam footage suggests at the very most that Musgrove needed the Deputies to help protect her and her daughter from someone named Charlie and that she might be under the influence of something, not that she was at a substantial risk of overdosing.

Plaintiffs respond that "[t]his case is not about whether the officers knew about a potential overdose *specifically*." Rather, Plaintiffs assert the Deputies believed Musgrove had taken *some* substance, and that should be sufficient to create a triable issue of fact on the Deputies' awareness of a substantial risk. Our precedent forecloses that contention. *See, e.g., Brown v.*

*Strain*, 663 F.3d 245, 250–51 (5th Cir. 2011) ("[Defendant] gives no persuasive reason why Plaintiffs' allegations that he was aware that Brown had overdosed on cocaine and needed immediate medical treatment are legally insufficient to either support their claim or defeat his qualified immunity defense."); *O'Neal v. City of San Antonio*, 344 F. App'x 885, 890 (5th Cir. 2009) (per curiam) (holding that the plaintiffs failed to satisfy the second deliberate-indifference prong—even though the officers witnessed decedent consume crack cocaine—because "the officers were unaware of an excessive risk of an overdose").

Plaintiffs also assert that the Deputies were on notice of a substantial risk because the paramedics told them that Musgrove needed to go to the hospital. But the paramedics said no such thing. As the bodycam footage and the Deputies' depositions make abundantly clear, the paramedics voluntarily released Musgrove into police custody after she refused examination, and the paramedics never told Deputy Holland or May that Musgrove needed urgent medical attention. *See Tamez v. Manthey*, 589 F.3d 764, 770–71 (5th Cir. 2009) (rejecting a similar claim where "the Tamez Family's brief argues that Nurse Esquivel told the detectives to take Tamez to the hospital immediately" because nothing in the record supported the assertion).

Finally, Plaintiffs claim that Musgrove's behavior in the back seat of Holland's patrol vehicle "was a marked change from Ms. Musgrove's prior state and should have alerted the officers to an increased need for a hospital." Again, Plaintiffs have no evidence for this assertion. Deputy Holland explained that Musgrove talked on and off throughout the drive, and both Deputies claimed that Musgrove sat up at least once during that same 15-mile ride. Absent other information, this behavior does not indicate a substantial risk of an overdose. Regardless, deliberate-indifference "liability attaches only if [the Deputies] actually knew—not merely should have known—about the risk." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528 (5th Cir.

1999); *see also Domino*, 239 F.3d at 756 ("[A]n incorrect diagnosis does not amount to deliberate indifference."). Plaintiffs fail to identify any evidence that either Deputy interpreted Musgrove's behavior as a sign of overdose or otherwise believed that serious harm was about to befall her.

2.

As for the third deliberate-indifference prong, the Deputies responded to the situation with tact and care, not "reckless[] disregard[]." *Garza v. City of Donna*, 922 F.3d 626, 635 (5th Cir. 2019) (quoting *Farmer*, 511 U.S. at 836). Recall that to satisfy the third prong, Plaintiffs must prove that the Deputies "refused to treat [Musgrove], ignored [Musgrove's] complaints, intentionally treated [Musgrove] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for [Musgrove's] serious medical needs." *Davis*, 35 F.4th at 963 (quotation omitted).

Deputies Holland and May did none of the above. Instead, they called an ambulance—even after Musgrove had repeatedly denied consuming any drugs or alcohol and repeatedly refused medical attention. They went out of their way to comfort A.A. and place the child with relatives so that she wouldn't be surrendered to DHS. While they were transferring A.A. to Evans and Danos, May informed Danos he would have the nurse assess Musgrove again at the police station. And once they finally arrived at the police station and found Musgrove unresponsive, they quickly took her from the car, removed her handcuffs, sat her up in a chair, and called another ambulance. "Even if those steps were 'ineffectual,' they do not demonstrate deliberate indifference." *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 554 (5th Cir. 1997); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 421 (5th Cir. 2021) ("While these measures may have been inadequate, Plaintiffs do

not present any evidence that the Officers *knew* they were insufficient and intentionally failed to do more out of indifference to Aguirre's well-being.").

To all this, Plaintiffs simply assert that the Deputies were deliberately indifferent by taking Musgrove to the police station and not directly to the hospital. But "[t]o accept appellant's claim would be to mandate as a matter of constitutional law that officers take all criminal suspects under the influence of drugs or alcohol to hospital emergency rooms rather than detention centers. That would be a startling step to take." *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999); *see also Sanchez v. Young Cnty.*, 866 F.3d 274, 281 (5th Cir. 2017) ("The Constitution does not require that officers always take arrestees suspected to be under the influence of drugs or alcohol . . . to a hospital against their wishes.").

Finally, Plaintiffs assert that the Deputies "wast[ed] 45 minutes waiting in the parking lot [waiting for Evans and Danos] after leaving the scene." But this argument is even more deficient than the last. That is because "the reason for delay in this case"—to place four-year-old A.A. with family members—"is a legitimate governmental objective." *Baldwin*, 973 F.2d at 327; *see also Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir. 1992) ("Pre-trial detainees . . . must be provided with reasonable medical care, unless the failure to supply it is reasonably related to a legitimate government objective." (quotation omitted)). Moreover, a 45-minute delay is insubstantial in this situation where Musgrove had denied medical attention repeatedly and did not appear to be at risk of overdose. At the very least, the delay certainly wasn't "wanton" or "reckless." *Baughman v. Hickman*, 935 F.3d 302 (5th Cir. 2019) ("The 'official conduct must be "wanton," which is defined to mean "reckless."'" (quoting *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017)); *cf. Bias v. Woods*, 288 F. App'x 158 (5th Cir. 2008) (affirming a finding of deliberate indifference where a prison physician, rather than providing immediate

medical attention, ordered that a prisoner who had been nearly unconscious for 12 to 16 hours be transported to a different prison 150-miles away).

\* \* \*

There is no evidence that Deputies Holland and May were aware of a substantial risk to Musgrove, much less that they chose to disregard it. And because the *Monell* claims against Scott County cannot proceed without an underlying constitutional violation, *see Hicks-Fields*, 860 F.3d at 808, summary judgment as to both the Deputies and the County is AFFIRMED.